UNITED STATES of America,
Plaintiff-Appellee,

v.

William Raymond DELVAL and
Humberto Valenzuela-Maese,
Defendants-Appellants.

No. 78–5480.

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1979.

Richard M. Lovelace, El Paso, Tex. (Court-appointed), for Valenzuela-Maese.

Charles L. Roberts, Joseph Chagra, El Paso, Tex., for Delval.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and KRAVITCH, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellants William Delval and Humberto Valenzuela-Maese were convicted after a jury trial of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846[1] and of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).[2] Appellants assign errors pertaining to the constitution of the jury, alleged to have been tainted by the presence on the venire of a former confidential informer; they also contend that the evidence was insufficient to support their convictions, except that appellant Valenzuela does not challenge the sufficiency of the evidence as to his conviction for possession. We affirm the convictions.

*Facts:*

*A. The Marijuana Transaction*

Early in April 1978 Norman Smith, a Drug Enforcement Administration (DEA) informant, had several conversations with appellant Valenzuela in El Paso, Texas, regarding the purchase of a quantity of marijuana. Valenzuela indicated that he anticipated the arrival of some marijuana at any time. On April 14 Valenzuela called Smith to report that he had obtained some marijuana and, after receiving authorization from DEA Special Agent Fred Wendt, Smith subsequently agreed to purchase about 300 pounds. Valenzuela said that this quantity would present no problem as he had about 600 pounds available.

Smith and Valenzuela arranged for Smith to pick up a sample at Valenzuela's house that evening. Valenzuela went to Smith's house early the next morning to ascertain whether the quality of the "kilo brick" sample was satisfactory. At that time Smith and Valenzuela agreed upon a price of $70 per pound. Valenzuela had 100 pounds of marijuana with him that he wanted to transfer immediately; however, Smith did not want to have marijuana at his house with his wife and children present. Smith proposed to consummate the deal in a parking lot at about 7 o'clock that evening, but Valenzuela wanted to make the exchange by 2 p. m. He further stated that he would need a vehicle to transport the marijuana.

After consulting with Agent Wendt, Smith called Valenzuela at home to report that he would procure a car and pick him up at about 2 o'clock. Accordingly, Smith picked up Valenzuela in a rented car supplied by the DEA, and Valenzuela then left Smith at Hector's Pancake House where Smith was to wait while Valenzuela got the marijuana at a friend's house. When Smith asked if the drugs were at "Danny and Bill's house," Valenzuela answered in the negative.

1. 21 U.S.C. § 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. 21 U.S.C. § 841(a)(1) provides:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

. . .

Valenzuela proceeded to the house at 300 Pageant Street where he backed the rented car into the garage; the garage door was then closed. Several minutes later the garage door reopened, Valenzuela drove the car out, and a person who appeared to be wearing a pair of shorts closed the garage door. DEA agents were unable to identify this individual. Early that morning an agent surveilling the house had seen Valenzuela's car parked there.

When DEA agents stopped Valenzuela several blocks from 300 Pageant Street, they discovered 318 pounds of marijuana in plastic garbage bags in the passenger compartment and trunk of the car. Valenzuela stated at that time that he was ignorant of the contents of the bags, having received $100 simply to pick up the car, drive it to Pageant Street and then deliver the car and the bags to the San Jacinto Plaza in El Paso.

After arresting Valenzuela, the DEA agents procured a search warrant for the house at 300 Pageant Street. Meanwhile, other agents had maintained surveillance at the house in order to ensure that no one leave with any evidence. The only person to enter the house during this period was Danny Bruce [3] who used a key to open the front door; no one left the house. Approximately five minutes after Bruce's arrival, the DEA agents proceeded to execute the search warrant. Agent Wendt broke in the door, having received no response when he knocked and announced his authority as a federal agent with a search warrant.

Wendt found appellant William Delval in the kitchen dressed in a bathing suit and both Delval and Bruce were placed under arrest. There were no other persons in the house. At the time Delval was arrested there were in plain view in the kitchen several bags of marijuana as well as a "Mary Gin," a device used for refining marijuana. Roughly 205 pounds of marijuana were discovered in a corner of the garage together with some empty garbage bags similar to those in which the marijuana

being transported by Valenzuela had been packaged. The agents also found a triple beam scale, a bench beam scale, and a vacuum cleaner containing marijuana seeds and other residue in the garage. Delval went to one of the bedrooms to get dressed before being taken away.

### B. The Jury Selection

The jury in this case was selected on June 2, 1978 and the case came to trial on June 13. The 93-man venire from which the jury that tried appellants was chosen had been convened on April 10, 1978 and included David Markland, a former confidential DEA informant who testified in an earlier, unrelated case. Markland had nothing whatever to do with appellants' case, and he was immediately excused from the panel from which the jury in the instant case was to be selected as were all jurors who had heard Markland testify in the earlier trial. Defense counsel contended, however, that Markland's presence on the jury venire raised the possibility that Markland may have had conversations with other members of the panel which might have affected their ability to be fair and impartial. Defense counsel contended that the proper means for dealing with the possibility that the venire had been tainted was either to quash the jury venire entirely and await the convening of a new venire to try the case or to conduct a hearing at which prospective jurors would be individually questioned regarding their possible communications with Markland concerning his activities as an informant.

The district court declined to pursue either of these options fearing, with regard to the latter suggestion, that the effort to uncover any possible taint could itself give rise to prejudice where none had previously existed. Prior to denying the defendants' motion to quash the jury panel, the district court observed:

> Well, you might want to suggest to me as to how I might go about finding the taint. It would be impossible to do it

---

**3.** Bruce was indicted for conspiracy and for possession with intent to distribute and was

tried with appellants Delval and Valenzuela. The jury acquitted him on both charges.

without tainting, and the Court has no reason to believe that there is a taint, but will watch it very carefully . . . .[4] Counsel for the defendants did not suggest any means by which the court could conduct such an inquiry without thereby tainting the jury.[5]

The district court did, however, conduct an extensive examination of the prospective jurors during voir dire, asking specifically about their prior service in drug and other cases and their attitudes toward drug offenses generally in order to guard against any bias or prejudice toward the defendants herein. Several jurors were excused during voir dire when, in response to the court's questions, they indicated that they could not be entirely fair and impartial. At the conclusion of the jury selection, appellants' counsel stated that, aside from the court's refusal to inquire about each juror's possible contact with Markland, they were satisfied with the jury as selected. Appellants exercised none of their peremptory challenges. At the start of the trial on June 13, the district court denied appellants' renewed motion for a mistrial based on Markland's presence in the original venire. At no time, however, have appellants alleged that any impermissible communication between Markland and the jurors in this case actually occurred; rather appellants assert only that Markland's presence in the venire afforded an opportunity for prejudicial communication which might have occurred.

*Discussion :*

Appellants raise three issues on appeal: first, they contend that the district court should have declared a mistrial or quashed the venire because the jury panel may have been tainted by the presence of a former confidential government informant. Second, they argue that, even if the district

court was not required to quash the entire panel, the court erred in refusing to question prospective jurors specifically with regard to any communication they may have had with Markland concerning his activities as an informant. Finally, appellants contend that the evidence was insufficient to support the convictions, except that Valenzuela does not challenge the sufficiency of the evidence as to his conviction for possession.

## A. The Jury Issues

The Sixth Amendment[6] guarantee of a trial by a fair and impartial jury has been afforded the most solicitous judicial protection. Because this right lies at the heart of our system of criminal justice the courts respond with great sensitivity to allegations that personal predisposition or outside influence has impaired a juror's ability to render a dispassionate, unbiased and objective verdict.

No case, however, cited by appellants or disclosed by our own research has suggested that in a narcotics case the mere presence in the original jury venire of a former DEA informant who had no involvement whatever in the case at bar requires, without more, the quashing of the entire venire. The risk of any prejudice to appellants from the presence of the informant, Markland, in the venire was too speculative and conjectural to warrant this sort of drastic action. Appellants do not contend that Markland actually communicated with other members of the venire regarding the enforcement of the drug laws in general or his activities as an informant in particular; rather, they merely assert that between the convening of the venire on April 10 and the jury selection here on June 2 an opportunity for such conversation existed. Of course, Markland had nothing at all to do with appellants'

---

4. Tr., p. 8.

5. *See also* Tr., pp. 64–66·where, in a colloquy between Valenzuela's counsel and the court at the start of trial, the trial judge commented that counsel had suggested no specific questions during voir dire. During this same colloquy counsel could suggest no procedure short

of quashing the entire venire or individually questioning all 92 members of the venire.

6. The Sixth Amendment provides in part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . . .

case, and there has been no allegation either that Markland was in a position to communicate specific information concerning appellants or their case to other members of the venire or that he actually did so.

Given the highly attenuated risk of prejudice in this case and absent any specific allegations of improper communication between Markland and the other veniremen, the adoption of a rule requiring the quashing of the venire would represent a result wholly incommensurate with the danger to be avoided. The spectre of bias or prejudice must become considerably more tangible before it can overcome the general presumption in favor of jury impartiality. *See, e.g., Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975); *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961); *United States v. White,* 5 Cir., 1975, 524 F.2d 1249, *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976); *United States v. Wayman,* 5 Cir., 510 F.2d 1020, *cert. denied,* 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975). We, therefore, reject appellants' claim that the district court erred in denying their motions for mistrial based on its refusal to quash the jury venire.

We next consider appellants' contention that the trial court should have questioned the prospective jurors individually and specifically during voir dire concerning any possible conversations with Markland regarding his activities as an informant. Full and complete voir dire is, of course, necessary for the adequate development of any facts requiring the removal of a juror for cause as well as for the intelligent exercise of peremptory challenges.

Rule 24(a)[7] of the Federal Rules of Criminal Procedure commits the conduct of voir dire to the sound discretion of the district court, *e.g., United States v. Carroll,* 5 Cir., 1978, 582 F.2d 942, 946; *United States v. Price,* 5 Cir., 1978, 573 F.2d 356, 360–61; *United States v. Williams,* 5 Cir., 1978, 573 F.2d 284, 287; *United States v. Garza,* 5 Cir., 1978, 574 F.2d 298, 303; *United States v. Nell,* 5 Cir., 1976, 526 F.2d 1223, 1229, subject to the essential demands of fairness. *E. g., Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931); *United States v. Nell, supra,* 526 F.2d at 1223; *United States v. Walker,* 5 Cir., 1977, 559 F.2d 365, 371; *United States v. Morgan,* 5 Cir., 1977, 562 F.2d 1001, 1002, *cert. denied,* 434 U.S. 1050, 98 S.Ct. 899, 54 L.Ed.2d 802 (1978).

The district court's discretion extends both to the decision whether or not to submit suggested questions to the jury, *e. g., United States v. Carroll, supra,* 582 F.2d at 846; *United States v. Price, supra,* 573 F.2d at 360–61; *United States v. Ledee,* 5 Cir., 1977, 549 F.2d 990, 992, *cert. denied,* 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977); *United States v. Williams, supra,* 573 F.2d at 287, and to the decision whether to question prospective jurors collectively or individually. *E.g., United States v. Carroll, supra* ; *United States v. Davis,* 5 Cir., 1978, 583 F.2d 190, 196–97; *United States v. Arlt,* 5 Cir., 567 F.2d 1295, *cert. denied,* 436 U.S. 911, 98 S.Ct. 2250, 56 L.Ed.2d 412 (1978); *United States v. Price, supra,* 573 F.2d at 360–61.

The standard for evaluating the district court's exercise of its discretion is whether the means employed to test impartiality have created "a reasonable assurance that prejudice would be discovered if present." *United States v. Nell, supra,* 526 F.2d at 1229; *United States v. Dellinger,* 7 Cir., 1972, 472 F.2d 340, 367, *cert. denied,* 419 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973). Phrased differently, the central inquiry is whether the district judge's "over-

---

7. Rule 24(a), Fed.R.Crim.P., 18 U.S.C. provides:

*Examination.* The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attor-

ney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

all examination, coupled with his charge to the jury, affords a party the protection sought." *United States v. Williams, supra,* 573 F.2d at 287; *United States v. Goodwin,* 5 Cir., 1972, 470 F.2d 893, 898, *cert. denied,* 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973).

■ In the instant case the district court did not abuse its discretion in declining to question prospective jurors individually concerning possible conversations with Markland. As discussed above, Markland had had no contact with or involvement in appellants' case whatever. Moreover, there is no allegation that any sort of discussion or communication actually took place. Markland himself and any members of the jury panel who had seen him testify in an earlier case were, of course, excused at the outset from the panel from which the jury for appellants' trial was selected.

The searching inquiry conducted by the trial judge during voir dire was more than adequate to guard against the attenuated and speculative risk presented by Markland's presence in the venire. As we have already said, the court questioned the prospective jurors at length regarding any association with law enforcement officials, their prior service in drug cases or prior exposure to the prosecutors and witnesses, their attitude toward the increased incidence of violations of the drug laws, and their feelings toward drugs in general. In response to these and other more general questions concerning the existence of any bias or prejudice, a number of jurors admitted some partiality and were excused. There is no reason to believe that the jurors who were ultimately empanelled would have been reticent about admitting any possible prejudice to the court. Finally, the fact that the jury in this case acquitted appellants' codefendant Danny Bruce clearly shows that the jury was able to and did consider only the testimony and argument presented in court, weighing the quantum of evidence as to each defendant and reaching what we believe was a fair and impartial verdict.

### B. The Sufficiency of the Evidence

■ The standard for reviewing the sufficiency of the evidence to support a jury verdict is whether "there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Appellant Valenzuela challenges only the sufficiency of the evidence as to his conviction for conspiracy, evidently conceding that the jury could reasonably have inferred that he was in possession of the 318 pounds of marijuana found in the car with him. There was ample, credible evidence adduced at trial from which the jury could further have inferred that Valenzuela had conspired with appellant Delval to possess marijuana with intent to distribute.

Valenzuela went directly to Delval's residence after telling Smith he was going to a friend's house to pick up the marijuana. His car had been at that address earlier that day and there is no question that the marijuana in the rented car came from there. The 318 pounds of marijuana found in the rented car plus the 200 pounds found in the garage and the 100 pounds that Valenzuela had said were in his personal car when he first talked to Smith that day approximately equal the 600 pounds of marijuana that Valenzuela had said were available for sale. The jury could reasonably have concluded that it was Delval who closed the garage door when Valenzuela drove away in the rented car laden with marijuana. Since no one had left the house and only Bruce had entered prior to the execution of the search warrant, the jury could have found that Delval, who was wearing a bathing suit when arrested, was the person in shorts who closed the garage door after Valenzuela's departure. The plastic bags in which the marijuana found in the rented car was packaged were like those found in Delval's garage.

■ Similarly, the jury could properly have inferred that Delval resided at the house at 300 Pageant Street and that he was in possession of the marijuana and marijuana paraphernalia found in the kitch-

en and garage of the house. Delval was arrested in the kitchen with a number of packages of marijuana and a "Mary Gin" in plain view. The evidence was thus sufficient to support Delval's convictions for possession with intent to distribute and for conspiracy to possess with intent to distribute.

The judgment is therefore

AFFIRMED.