**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Harold COREY,
Defendant-Appellant.**

**No. 79–5607
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1980.

Stanley M. Serwatka, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., Jerry M. Tanzy, El Paso, Tex., for plaintiff-appellee.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

PER CURIAM:

Edward Harold Corey appeals from his escape attempt conviction under 18 U.S.C. § 751(a) (1976).[1] He contends that his sixth

---

1. 18 U.S.C. § 751(a) (1976) provides:

   CHAPTER 35—ESCAPE AND RESCUE

   § 751. Prisoners in custody of institution or officer

   (a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institu-tion or facility in which he is confined by di-rection of the Attorney General, or from any custody under or by virtue of any process is-sued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the

amendment right to a fair and impartial jury was violated because the trial judge refused to ask on voir dire certain requested questions dealing with possible credibility choice bias favoring the testimony of law enforcement and other government officials. Corey also claims that the trial court committed reversible error in allowing a prison psychologist to testify as an expert on Corey's mental state at the time of his confession. We find no error in admitting that testimony. Moreover, because we find no error committed in the conduct of voir dire which could have deprived Corey of a fair and impartial jury, his conviction is affirmed.

On the evening of May 10, 1979, appellant Corey hid in the recreation yard of the Federal Correction Institute at El Paso, Texas, until the guard had secured the yard and left. He later claimed that his purpose was to be found in an unauthorized area so that he would be placed in segregation, out of the reach of his gambling debt creditors in the prison population. That asserted purpose was certainly achieved later that evening when Corey began traversing the recreation yard. Guards in three different locations who spotted him fired at him, wounding him three times. Corey was taken into custody and treated for his injuries at a nearby hospital.

While recuperating the next day from surgery performed under general anesthesia, Corey was questioned by F.B.I. Special Agent Byron MacDonald and prison psychologist Dr. William Lucker. Corey testified at trial that he had no recollection of this interview, but Lucker and MacDonald both stated that he had confessed his intent to escape from the prison. An anesthetist testified at trial that on occasion the anesthesia given Corey could induce amnesia. Corey further asserted at trial that he had never intended to escape, but only to commit an infraction which would land him in the comparative safety of a segregation unit.

Emphasizing the crucialness of credibility choice in his case, Corey contends on appeal that the trial court gave inadequate protection to his constitutional right to a fair and impartial jury. He argues that the judge improperly declined to ask on voir dire the substance of three questions he submitted to discern any credibility choice bias held by jurors. Corey's requested questions were the following:

(a) Are there any members of the panel who would tend to believe the testimony of a Government agent or employee over the testimony of a private citizen, solely because he is a government employee or agent?

(b) Are there any members of the panel who would tend to believe the testimony of a Government agent or employee over the testimony of a convicted felon, solely because he is a Government employee or agent?

(c) Are there any members of the panel who would tend to believe the testimony of a Government agent or employee over the testimony of a convicted felon, solely because the person is a convicted felon?

Rather than ask the proposed questions, the judge asked the jury venire more general questions. He asked the venire as a whole whether any of them or their close family members and friends had served or were serving as law enforcement officers. Those who responded affirmatively the court asked individually about possible bias. The judge then asked the venire generally whether any "preconceived bias or notion or prejudice" would hamper their service as fair and impartial fact finders in that case. No one asserted such a bias. Next, the judge asked if any members of the venire or their family members had received any special law enforcement training, or if any were federal government employees. Those who answered affirmatively the

custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition

or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.

judge quizzed individually about possible bias. None conceded any prejudice. Significantly, the judge asked specifically whether any prospective juror held any bias or prejudice towards Corey, emphasizing his status as a convicted felon. From the silent response the judge concluded that no unfair bias existed. The judge then concluded voir dire by asking:

Whether I have asked it or not, do any of you know any reason at all under any circumstances why you could not serve as a fair and impartial juror on this case? You know the nature of the charge against Mr. Corey.

All right, would you be satisfied then if you were the United States Attorney to have your case tried by twelve people in the frame of mind in which you now find yourself?

I gather that you would.

If you were the defendant, Mr. Corey, charged as he finds himself charged, would you be satisfied to have your case tried by twelve people in the frame of mind in which you now find yourself?

All right, I gather that you would.

Apparently satisfied with the impartiality of the venire, the judge asked the panel no more detailed questions about bias and permitted the case to proceed to trial. In this closing charge, the court gave only general instructions for evaluating the testimony of witnesses.[2]

Corey now contends that the trial court's efforts did not go far enough to insure impartiality. He concedes that the district court has broad discretion in the conduct of voir dire. *See United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979); *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976). He points out, however, that that discretion is "subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 471,

75 L.Ed. 1054 (1931). The test to determine whether, in the conduct of voir dire, the essential demands of fairness have been met is " 'whether the procedure used for testing impartiality created a reasonable assurance that prejudice would be discovered if present.' " *United States v. Nell*, 526 F.2d at 1229, quoting *United States v. Dellinger*, 472 F.2d 340, 367 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973).

If a judge's interrogation of the jury uncovers an "actual bias," the judge must grant a challenge for cause. *United States v. Nell*, 526 F.2d at 1229. "Actual bias can come to light during voir dire in two ways: by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *Id.* Because presumed bias depends entirely on surrounding circumstances, the trial judge must develop the factual circumstances sufficiently to make an informed judgment on the existence of actual bias. Once a party has raised the spectre of potential actual prejudice, specific and direct questioning is necessary to ferret out those jurors who would not be impartial. Broad, vague questions of the venire will not suffice. *Id.*

Knowing what specific questions to ask is difficult for the judge, who lacks the same grasp attorneys have of the complexities and nuances of a particular case. *United States v. Ledee*, 549 F.2d 990, 993 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977). This court has previously stressed that voir dire examination not conducted by counsel has little meaning. *Id.* For reasons of economies of time and implicit identification of the jury as a neutral body, the judge may conduct voir dire. Fed.R.Civ.P. 24(a). If he does, however, he should at least give all deliberate deference

---

2. The judge charged the jury, "The Court does not determine what weight should be given to such evidence, nor does the court pass on the credibility, that is, the believability of any witness." Supp. Rec. at 321. The judge also charged, "Now, by the same token, it is also your duty to base your verdicts solely upon the testimony and the evidence in the case without prejudice or without sympathy." Supp. Rec. at 320. Finally, the Court also charged that the jury, in assessing the credibility of testimony should consider the relationship of any witness to the government or to the defendant.

to counsels' advantage of prior research and investigation. Their preparation of the case gives them more intimate knowledge of the strengths and weaknesses of their clients' cases, and consequently accords them ability to prepare voir dire questions better designed to insure a fair and impartial jury. *Id.*

■ This principle is particularly applicable in Corey's case. The circumstances of this case convince us that the trial court should have paid greater heed to the risk of actual bias that Corey's lawyer raised. Not some effort to determine ahead of time how potential jurors might vote, but rather circumstances begetting presumptive bias led the lawyer to propose the three credibility bias questions. *But see United States v. Jackson*, 448 F.2d 539, 542–43 (5th Cir. 1971), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 750, 30 L.Ed.2d 752 (1972). Corey's attorney knew that the crux of his client's case was Corey's lack of intent to leave the prison. Corey's own testimony was going to be vital to that defense, but putting him on the stand would be useless if some juror should refuse to believe him solely because he was a convicted felon. The critical evidence consisted of conflicting testimony by prison employees and by Corey, who claimed he could not remember the confession about which his accusers testified. In such an instance, juror prejudice easily could be the unlawful foundation for a guilty verdict. Moreover, the risk of bias here is not hypothetical, but demonstrable. During his closing argument, the prosecutor, stressing that Corey had confessed his illicit intent, asked rhetorically, "Need I say anymore?" Apparently convinced, one juror responded from the jury box: "No."[3]

We nonetheless conclude that in this case the trial judge did not abuse his discretion. "[T]he central inquiry is whether the district judge's 'overall examination, coupled with his charge to the jury, affords a party the protection sought.'" *United States v. Delval*, 600 F.2d at 1102–03, quoting *United States v. Williams*, 573 F.2d 284, 287 (5th Cir. 1978). Our detailed review of the voir dire examination reveals that the judge's examination adequately covered the essence of the proposed questions. *See Ham v. South Carolina*, 409 U.S. 524, 526–27, 93 S.Ct. 848, 850–851, 35 L.Ed.2d 46 (1973). Especially helpful in providing the protection Corey sought was the court's query concerning bias toward Corey because he was a convicted felon. Although the trial court might have pursued Corey's request more directly, we cannot say that the judge abused his discretion in employing the means he chose.

■ Corey also complains that the trial court improperly admitted expert testimony by prison-employed psychologist Dr. William Lucker. Corey argues that Lucker's testimony should have been limited to a factual account of what he observed during Corey's interrogation at the hospital by F.B.I. Agent MacDonald. Instead, the judge permitted Lucker to testify as an expert on Corey's mental state during the interrogation. We find no error in that decision. The prosecutor had properly elicited from Lucker an adequate basis for the expert testimony. First, Lucker's qualifications were established. Then Lucker stated that at the time of questioning he had observed Corey from a professional viewpoint, evaluating on a technical basis Corey's reactions to the questions and drawing conclusions from his special knowledge. No abuse of discretion occurred in such a case. *See Perkins v. Volkswagen of America, Inc.*, 596 F.2d 681 (5th Cir. 1979).

For the foregoing reasons, Corey's conviction is AFFIRMED.

---

**3.** The record indicates that the trial judge was not made aware of that juror comment in time to give any curative instruction. Rec. at 117–18.