UNITED STATES of America,
Plaintiff-Appellee,

v.

John A. TEGZES, Susan Langston,
Defendants-Appellants.

No. 82–5600.

United States Court of Appeals,
Eleventh Circuit.

Sept. 19, 1983.

Joel Hirschhorn, P.A., Harry M. Solomon, Miami, Fla., for Tegzes.

Joel Kaplan (court appointed), Miami, Fla., for S. Langston.

Stanley Marcus, U.S. Atty., Kenneth Lipman, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellants John Tegzes and Susan Langston were tried and convicted by a jury for conspiracy to possess with intent to distribute cocaine and for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. For the reasons stated below, we affirm the convictions of the appellants.

## THE VOIR DIRE

Appellants contend that the district court erred in the manner in which it conducted the voir dire of the jury panel. During voir dire, the trial judge inquired whether any of the prospective jurors, or any of their close friends or members of their family, ever had a problem with narcotics or drugs. Juror Mistrom responded, "A very dear friend of mine has not left his house in seven years because of brain damage from drugs." As a result of this statement and the responses of other jurors concerning experiences with drugs, the court inquired whether any juror held a belief or opinion regarding drug offenses that would make it impossible for them to be fair and impartial jurors.[1] Only one juror, who was subsequently excused for cause, stated that his beliefs and opinions towards drugs would prevent him from serving fairly and impartially.[2]

Later during the selection of alternate jurors, a prospective alternate juror, Ms. Wade, made an additional statement concerning experiences with drugs:

There was the situation that I did see my youngest son, through dope, OD before he was 18 years old.

Counsel for defendant Tegzes moved the court to declare a mistrial on the grounds that Ms. Wade's statement had tainted the other jurors on the panel. The trial judge dismissed Ms. Wade but denied the motion for a mistrial. The court stated there must be a greater showing of possible and probable prejudice to merit a mistrial and observed, "A lot of people know about folks who have OD'd." The court also refused a request to question the jury panel individually or collectively to see what impact Ms. Wade's remarks may have had on the ability of the other jurors to be fair and impartial. The trial judge further explained that he believed a special instruction to the jury on Wade's remark would create a problem in the minds of the jurors which did not previously exist, adding that it was his observation that the other jurors did not pay any particular attention to Ms. Wade's comment.

---

1. The trial judge inquired of the prospective jurors as follows:

Now, those of you who have answered that question affirmatively, do you have as a result thereof, do you have a belief or an opinion that offenses having to do with drugs are unique in any respect and that they ought to be prosecuted with extraordinary vigor or they should not constitute an offense at all, or that the penalties that the law places are improper for any reason, either whether they are too heavy or too light?

We want to find out whether there are any of you that have feelings about that that would make it impossible for you to serve fairly and impartially if you were asked to do so in this case . . . .

I guess the basic question is if you think that your exposure to personal situations of that kind will make it really impossible for you to serve fairly and impartially and take the evidence that you hear in this case, and the law, and apply it objectively, then we want to know that.

We want people who can approach this question in an objective fashion.

If you think you cannot do that, let us know.

2. The court refused to excuse Juror Mistrom for cause, prompting defendant Tegzes to exercise one of his peremptory challenges.

Appellants contend that the district court committed reversible error in refusing to question the jury panel concerning the effect of Ms. Wade's statement or in refusing to give the jury a curative instruction to disregard the remark. Appellants argue that Ms. Wade's statement raised the spectre of "potential actual prejudice" among the other jurors, therefore "specific and direct questioning is necessary to ferret out those jurors who would not be impartial." *See United States v. Corey*, 625 F.2d 704, 707 (5th Cir.1980), *cert. denied*, 450 U.S. 925, 101 S.Ct. 1377, 67 L.Ed.2d 354 (1981); *United States v. Nell*, 526 F.2d 1223, 1229–30 (5th Cir.1976).

■ The conduct of voir dire of a jury panel is a matter directed to the sound discretion of the trial judge, subject to the essential demands of fairness. *United States v. Brooks*, 670 F.2d 148, 152 (11th Cir.), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1339 (1982); *United States v. Booher*, 641 F.2d 218, 219 (5th Cir.1981). The district court's discretion includes the decision whether or not to submit suggested questions to the jury. *United States v. Brunty*, 701 F.2d 1375 (11th Cir.1983); *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir.1979). The standard for evaluating the district court's exercise of its discretion is whether the procedure used for testing juror impartiality created "a reasonable assurance that prejudice would be discovered if present." *United States v. Holman*, 680 F.2d 1340, 1344 (11th Cir.1982); *United States v. Corey*, 625 F.2d at 707; *United States v. Nell*, 526 F.2d at 1299. The standard has also been phrased as whether the district judge's "overall examination, coupled with his charge to the jury, affords a party the protection sought." *United States v. Delval*, 600 F.2d at 1102–03; *Unit-*

*ed States v. Williams*, 573 F.2d 284, 287 (5th Cir.1978); *United States v. Goodwin*, 470 F.2d 893, 898 (5th Cir.1972), *cert. denied*, 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973).

■ The constitutional standard of fairness requires that the criminally accused have "a panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975), *quoting Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). However, jurors need not be totally ignorant of the consequences of crime, nor free of opinion towards crime. *Cf. Irvin v. Dowd*, 366 U.S. at 722–23, 81 S.Ct. at 1642–43 (jurors need not be totally ignorant of the facts and issues in a case, nor be free of impressions or opinions on the merits of the case); *see also Mayola v. Alabama*, 623 F.2d 992, 999 (5th Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981). The chances are that every juror offered for the trial of this case, if questioned, would have admitted to knowledge that some people who use drugs experience tragic results. While knowledge that criminal conduct sometimes leads to tragic results may create a bias towards crime, bias or prejudice towards crime does not disqualify one to sit as a juror in a criminal case so long as those feelings do not lead to a predisposition toward the prosecution or accused.[3] *See e.g., United States v. Murray*, 618 F.2d 892, 899–900 (2d Cir.1980); *People v. Taggart*, 621 P.2d 1375, 1384 (Colo.1981); *Freeman v. State*, 556 S.W.2d 287, 292 (Tex. Cr.App.1977); *State v. Caldwell*, 117 Ariz. 464, 573 P.2d 864, 867 (1977); *People v. Davis*, 27 Cal.App.3d 115, 103 Cal.Rptr. 494, 497 (1972); *State v. Marcus*, 240 Iowa 116,

---

**3.** The reasoning of the court in *Parker v. State*, 34 Ga. 262, 266 (1866), quoted in *Jenkins v. State*, 146 Ga.App. 458, 459, 246 S.E.2d 466, 467–68 (1978), is applicable here:

Now, the only question is, does the prejudice referred to in the law apply to the person of the accused, or to the offense for which he stands indicted? We think the former: otherwise, all good men would be disqualified to sit as jurors in all criminal cases.

For, if they feel as they should do, they should desire the suppression of crime, and this desire will be in proportion to the aggravation and frequency of the offense. This feeling may serve to stimulate their zeal to bring delinquents to punishment. But it does not follow, by any means, that it will so warp their judgment as to render them incapable of doing justice to the parties, according to the law and the evidence of the case.

34 N.W.2d 179, 181 (1948); *Shank v. State,* 189 Ark. 243, 72 S.W.2d 519, 522 (1934).

Ms. Wade's remark does not raise the spectre of potential prejudice in other jurors that would require the court to ask additional questions of the panel. The statement did not constitute an opinion concerning the guilt or innocence of the defendants, nor did it relate to knowledge about the facts, parties, or witnesses involved in this case. The fact that other jurors may now know that criminal conduct leads to tragic results does not constitute "potential actual prejudice" toward the accused. Appellants' suggestion that mere awareness of the adverse consequences of crime induces bias toward the defendant is highly speculative and falls far short of the potential actual prejudice which would mandate additional voir dire. *See United States v. Fannon,* 403 F.2d 391, 393–94 (7th Cir.1968), *vacated on other grounds,* 394 U.S. 457, 89 S.Ct. 1224, 22 L.Ed.2d 416 (1969); *United States v. Smith,* 306 F.2d 596, 603 (2d Cir.1962), *cert. denied,* 372 U.S. 959, 83 S.Ct. 1012, 10 L.Ed.2d 11 (1963) (mere awareness that other jurors have prejudices does not disqualify those jurors who heard about those prejudices).

Moreover, the procedure employed by the trial judge adequately assured that any possible prejudice created by Ms. Wade's remark would be discovered if present. As noted, after Ms. Mistrom's comment about her friend, the court questioned the prospective jurors regarding their experiences or opinions towards drugs. At the beginning of the voir dire, the judge had instructed the prospective jurors in the courtroom to listen carefully to the questions posed by the court so that they could inform the court, if later asked, whether they would have answered affirmatively to any of the questions put to the other jurors.[4] In response to this instruction, several jurors who were selected for the jury after the court's inquiry of Ms. Mistrom's potential prejudice did inform the court of the existence of beliefs or opinions that may interfere with their ability to be fair and impartial. There is no reason to believe that any juror who was tainted by Ms. Wade's remark also would not have informed the court about any prejudice created by anything they heard during voir dire. *See United States v. Delval,* 600 F.2d 1098, 1103 (5th Cir.1979).[5]

The trial court could reasonably conclude under the circumstances that the previous questions and instructions were adequate to uncover any possible prejudice caused by Ms. Wade's statement. The trial judge was in the best position to observe any possible impact from the statement to determine if additional questioning was necessary. *See United States v. Carr,* 584 F.2d 612, 616–17 (2d Cir.1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). We agree with the observation of the court in *United States v. Perry,* 550 F.2d 524, 528 (9th Cir.), *cert. denied,* 434 U.S. 827, 98 S.Ct. 104, 54 L.Ed.2d 85 (1977), that the trial judge "is best able to walk that fine line between first questioning the jury to find bias and then later specifically requestioning the jury to the extent that confusion and bias are *created* in the jury by the existence of controversial issues which may or may not

---

4. The court instructed all prospective jurors as follows:

Now, that those of you whose numbers of [sic] have not been called may be needed if we exhaust all the panel or persons whose numbers are called by those peremptory challenges, and we will go to the remaining jurors. You should, therefore, listen carefully to everything that happens and be prepared to respond to the questions that we ask, even though you are not asked to respond affirmatively by virtue of your number not having been already called in the case.

Just because your number is not called, don't take it as an indication that you should not pay attention any longer. It is quite important that you continue to listen.

We are not going to repeat these questions over and over again. We will ask you to tell us if you would have answered affirmatively to any of the questions put to the jurors whose numbers were called before yours.

5. In fact, Ms. Wade's remark about her son's overdose came in response to the court's query whether she would have answered affirmatively to any of the questions put to the jurors who had been selected before her.

exist." The district court's overall examination of the jury, coupled with the charge to the jury to base the verdict solely upon the testimony and evidence in the case without prejudice or sympathy, afforded the appellants the protection sought.

■ Appellants also claim that the district court erred in failing to grant a mistrial or refusing to quash the entire panel as a result of the statements of jurors Mistrom and Wade. The decision to declare a mistrial is within the sound discretion of the trial court. *United States v. Brooks,* 670 F.2d at 152; *United States v. Pritchard,* 417 F.2d 327, 328 (5th Cir.1969). The trial judge was best able to observe the demeanor of the other jurors and to evaluate any possible prejudice. *See Arizona v. Washington,* 434 U.S. 497, 514, 98 S.Ct. 824, 834, 54 L.Ed.2d 717 (1978). Furthermore, the spectre of bias or prejudice created by the jurors' remarks is too speculative and conjectural to overcome the general presumption in favor of jury impartiality. *See United States v. Delval,* 600 F.2d at 1103. We therefore hold that the decision not to conduct additional voir dire and not to quash the jury venire and declare a mistrial was within the discretion of the trial judge.

■ Appellants further contend that the trial court erred in refusing to dismiss for cause prospective juror Walsh, who stated that she had a hearing defect. The decision whether to excuse a juror for cause is entrusted to the discretion of the trial judge. *United States v. Butera,* 677 F.2d 1376, 1384 (11th Cir.1982); *United States v. Salinas,* 654 F.2d 319, 328 (5th Cir.1981). As this court recently observed, there are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion than in ruling on challenges for cause in empanelling of a jury. *United States v. Carlin,* 698 F.2d 1133, 1135 n. 7 (11th Cir.1982), *quoting United States v. Ploof,* 464 F.2d 116, 118 n. 4 (2d Cir.), *cert. denied,* 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972). Ms. Walsh indicated to the judge that she would be able to hear the parties and witnesses if they would speak up. The trial judge was in the best position to determine Walsh's ability to be a competent juror. *See United States v. Sears,* 663 F.2d 896, 900 (9th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982). We find no abuse of discretion in denying the challenge for cause.

### OTHER ISSUES

Tegzes and Langston also contend that the trial court erred in failing to require the government to produce its confidential informant at trial. In addition, Tegzes asserts that the trial court's denial of his motion to sever was an abuse of discretion and claims that the evidence at trial was insufficient to support his convictions. Langston further contends there was insufficient evidence at trial to sustain her conviction for possession with intent to distribute and argues that the trial court erred in reformulating her proposed theory of the defense jury instruction.

We find no merit in any of these issues raised. Accordingly, the judgment of the district court is

AFFIRMED.