[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13612

_____

CARELYN FYLLING,

Plaintiff-Appellant,

*versus*

ROYAL CARIBBEAN CRUISES, LTD.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-21953-JEM

_____

Before WILSON, NEWSOM, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Because "[t]he great value of the trial by jury certainly consists in its fairness and impartiality," *United States v. Burr*, 25 F. Cas. 49, 50 (C.C.D. Va. 1807) (Marshall, C.J.), we have long required excusal of biased jurors and required district courts to adequately investigate potential juror bias when specific facts suggesting such bias surface.

The parties to this personal injury action tried the case to a jury for two weeks. Following voir dire, the jury was selected and sworn, and the trial began. Shortly after opening arguments, the district court became aware that one of the impaneled jurors—Juror Eight—had a niece who worked for the Defendant, Royal Caribbean Cruises, Ltd. The district court did not remove Juror Eight, did not subject her to any questioning about her niece and any potential for bias, and eventually, permitted her to deliberate—even though there were enough jurors to return a verdict without her. The jury found Royal Caribbean negligent, but it assessed a comparative-negligence finding against Plaintiff Carelyn Fylling that reduced her recovery by ninety percent.

After careful review, and with the benefit of oral argument, we conclude that the district court abused its discretion by not investigating whether Juror Eight could impartially discharge her responsibilities after learning that her niece worked for Royal Caribbean and by allowing her to participate in deliberations. We therefore reverse and remand for a new trial.

## I.    BACKGROUND

On March 4, 2017, Fylling tripped, fell, and struck her head while entering deck five of Royal Caribbean's *Harmony of the Seas* cruise ship.  Fylling sued Royal Caribbean for negligence in the United States District Court for the Southern District of Florida.

The case proceeded to trial.  The parties both submitted proposed voir dire questions.  One of Royal Caribbean's proposed questions, which Fylling did not object to, was whether the prospective jurors "[knew] or [were] related to anyone employed by a cruise line."  After filing proposed questions, Fylling filed an unopposed motion for limited attorney voir dire.  The district court denied the motion, explaining its typical practice of not allowing lawyers to ask questions during voir dire.

Jury selection began on September 13, 2021.  The district court allowed counsel for each party to introduce themselves, their clients, and others in the courtroom with them.  Royal Caribbean's counsel introduced himself, his co-counsel, his paralegal, his IT consultant, and Royal Caribbean's corporate representative.  The district court asked the venire panel, "Do you know any of these folks?"  No one said yes.  The district court then requested that the parties read their witness lists and asked the members of the venire panel if they knew any of the witnesses.  Again, no one said yes.

Next, the district court individually asked each prospective juror a series of questions.  The district court asked the prospective jurors to state their names, occupations, and marital statuses, and asked them whether they had been involved in any lawsuits, had

served on any juries, or had any immediate family members who had been involved in a lawsuit. The district court also asked the panel members whether they had children and, if so, what their children's occupations were.

After individual questioning, the district court posed several questions to the venire panel as a group. Those questions included whether panel members knew any other prospective juror before that day, whether they belonged to a religion or group that would prevent them from judging the case, whether they or someone close to them had been injured on a cruise ship, whether they had ever suffered a concussion or a brain injury, whether they would accept their role as the factfinder, and whether they had any physical, emotional, or language problems that would make it difficult for them to participate. The district court did not ask Royal Caribbean's proposed question about whether the prospective jurors had any relatives who worked for a cruise line.

Finally, the district court asked, "Can you think of any reason why you cannot sit on this jury and render a fair and impartial verdict based on the evidence and the law as I instruct you?" Only one prospective juror raised his hand. The district court asked him what his reason was. The prospective juror answered that he was an investor in Royal Caribbean. The district court replied, "You are. Okay. That's easy. Thank you. You're excused." The district court again asked, "Anybody else? Think of any reason why you could not be fair and impartial?" No one on the panel responded.

The parties then selected the jury, with each party exercising several challenges. Eight jurors were selected in total. The jury was impaneled and sworn, and the district court gave the jury preliminary instructions.

After opening statements, the district court dismissed the jury for the day. It then informed the parties and their lawyers that while the courtroom deputy was gathering the jurors' information, "one of the jurors"—Juror Eight—"said that her niece worked for the Defendant." The district court stated, "I don't know that that's disqualifying because I did ask is there anything that you—have any reason to think that you might not be fair and impartial in this case" and explained that it was "considering what to do about it." Fylling's counsel suggested that the juror should be excused because she would likely "be reluctant to return any kind of significant verdict." The district court responded, "If she thought it was going to put them out of business, that would be one thing. I doubt that this case is significant as it is to put them out of business." Ultimately, the district court advised the parties that it would likely "wait until the end of the case and if we have still eight jurors, excuse her as an alternate." "[I]f we have eight," the district court reasoned, "I would not have a problem with excusing her and telling her that she was an alternate all along. But if we had six, I think that she's covered herself by her answers to the questions."

The parties tried the case to the jury for ten days. On the ninth day of trial, the district court informed the parties that it had changed its mind about Juror Eight's fitness to deliberate,

reasoning that "she has indicated that she could be fair." It also observed that even though, "[a]dmittedly, [Fylling] might have used a peremptory challenge on her," Fylling "had already used all of [her] peremptory challenges, long before we got to this juror." When Fylling's counsel protested that Fylling could not have known about Juror Eight's niece when exercising her challenges, the district court reiterated that Juror Eight's niece's employment did not justify her removal from the jury, reasoning that any verdict "is not going to break Royal Caribbean and therefore, her niece is not likely to get fired." Royal Caribbean, for its part, emphasized that Juror Eight had indicated that she could be fair and impartial in response to the district court's questions. The district court agreed, stating that any family relationship to the parties is "covered by asking [jurors] if they could be fair and impartial in the case." Juror Eight remained on the jury and participated in deliberations.

The jury returned a verdict soon after being instructed. It found that both Royal Caribbean and Fylling were negligent. More specifically, it found that Fylling's negligence accounted for ninety percent of her damage and Royal Caribbean's negligence accounted for ten percent. As for damages, the jury determined that Fylling suffered $750,000 in non-economic damages, but—in light of the ninety-percent comparative-negligence finding—awarded Fylling only $75,000.

The district court entered judgment in accordance with the verdict. Fylling timely appealed.

21-13612                Opinion of the Court                    7

## II.    STANDARD OF REVIEW

We review a district court's decision on whether to dismiss a juror for abuse of discretion. *See United States v. Brown*, 40 F.3d 1171, 1182 (11th Cir. 2021). The abuse of discretion standard allows "a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989).

## III.    ANALYSIS

Fylling raises two distinct jury-related challenges on appeal. First, Fylling argues that the district court's voir dire questioning was insufficient to reveal the biases of prospective jurors, as shown by the post-voir dire revelation that Juror Eight's niece worked for Royal Caribbean. Second, Fylling contends that even if the district court did not reversibly err in conducting voir dire, the district court abused its discretion when it declined to excuse, or at least individually question, Juror Eight after discovering her family connection to Royal Caribbean during trial. We address only Fylling's second argument.[1]

"One touchstone of a fair trial is an impartial trier of fact— 'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). "Civil

---

[1] On appeal, Fylling also challenges one of the district court's evidentiary rulings and its refusal to give two of Fylling's proposed jury instructions. We do not address these issues, however, as we conclude that Fylling is entitled to a new trial.

juries, no less than their criminal counterparts, must follow the law and act as impartial factfinders." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 630 (1991). To that end, we have held that a district court must dismiss a juror for cause if the juror reveals actual bias or if bias is implied because of the juror's relationship to a party. *See United States v. Nell*, 526 F.2d 1223, 1229 & n.8 (5th Cir. 1976).[2]

A corollary of the requirement to excuse biased jurors is the duty to investigate colorable claims of juror bias when they arise. When a district court becomes aware of potential juror bias, "the trial judge must develop the factual circumstances sufficiently to make an informed judgment" as to whether bias exists. *United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980). Developing an adequate record sometimes requires "specific and direct questioning" of an individual juror. *Id.* We have explained that "specific questioning is necessary" when, "under all of the circumstances presented, there is a reasonable possibility that a particular type of prejudice might have influenced the jury." *Berthiaume v. Smith*, 875 F.3d 1354, 1358 (11th Cir. 2017). Thus, "[b]road, vague questions of the venire will not suffice" when a reasonable possibility of bias develops. *Corey*, 625 F.2d at 707.

To be sure, "the obligation to impanel an impartial jury lies in the first instance with the trial judge." *United States v. Montgomery*, 772 F.2d 733, 735 (11th Cir. 1985) (quoting *Rosales-Lopez v.*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See id.* at 1209.

*United States*, 451 U.S. 182, 189 (1981)).  Pretrial voir dire is the primary vehicle through which the district court can detect potential juror bias.  Voir dire examination serves to protect against a partial trier of fact "by exposing possible biases, both known and unknown, on the part of potential jurors."  *McDonough*, 464 U.S. at 554.  Accordingly, we have recognized that district courts have "ample discretion in determining how best to conduct *voir dire*."  *Montgomery*, 772 F.2d at 735 (quoting *Rosales-Lopez*, 451 U.S. at 189); *see also, e.g.*, Fed. R. Civ. P. 47(a) (affording district courts substantial discretion over the questioning of prospective jurors during voir dire); *Skilling v. United States*, 561 U.S. 358, 386 (2010) ("Jury selection . . . is 'particularly within the province of the trial judge.'" (quoting *Ristaino v. Ross*, 424 U.S. 589, 594–95 (1976))).

But a district court's obligation to protect the right to an impartial jury does not end when the jury is impaneled and sworn. For example, in *United States v. Cannon*, 987 F.3d 924 (11th Cir. 2021), we reviewed a district court's dismissal of a juror whose hairdresser was the defendant's wife.  *Id.* at 936.  The district court did not learn of the juror's connection to the defendant until the second day of trial.  *Id.*  Still, the district court placed the juror under oath to question her about the relationship and invited both parties to participate and present authority.  *Id.* at 945.

Ultimately, the district court in *Cannon* dismissed the juror, and we affirmed.  *Id.*  In doing so, we observed that the juror had "told the district court the relationship would not impact her ability to perform her duties," but we explained that "[d]espite her

10                    Opinion of the Court                    21-13612

statement of no actual bias, the court was still *required* to determine if there would be implied bias due to the relationship." *Id.* (emphasis added). Thus, even when a "reasonable possibility" of juror bias is revealed after trial has begun, *Berthiaume*, 875 F.3d at 1358, the district court "must develop the factual circumstances sufficiently to make an informed judgment on the existence of actual bias," *Corey*, 625 F.2d at 707; *see also United States v. Gemar*, 65 F.4th 777, 781 (5th Cir. 2023) (holding that a district court abused its discretion by declining to individually question a juror when that juror's potential bias came to light after trial); *Oswald v. Bertrand*, 374 F.3d 475, 484 (7th Cir. 2004) (recognizing a trial judge's "responsibility to conduct an adequate investigation" when potential bias "surface[s] during . . . trial").

Fylling argues that Juror Eight's revelation about her niece's employment required either her removal or further investigation by the district court. Royal Caribbean responds that no further investigation was necessary because, before learning about Juror Eight's niece, the district court had asked the venire panel as a group whether there was any reason they could not be impartial, and Juror Eight did not raise her hand or speak. That broad question during voir dire, according to Royal Caribbean, reasonably assured Juror Eight's impartiality.

Royal Caribbean's position conflicts with our precedents. We have held that "when a defendant is trying to prove presumed bias, the court has the duty to develop the facts fully enough so that it can make an informed judgment on the question of 'actual' bias."

*Nell*, 526 F.2d at 1229 (citing *United States v. Montelongo*, 507 F.2d 639, 641 (5th Cir. 1975)); *see also Cannon*, 987 F.3d at 945 (applying this rule to potential bias discovered after trial began and noting that the district court "was . . . required" to determine whether juror was impliedly biased). Thus, it follows that when a juror reveals a familial connection to a party, the district court must—at minimum—develop a record adequate to rule on whether the juror is actually or impliedly biased. *See Corey*, 625 F.2d at 707. And that task, in turn, requires "specific questioning." *Berthiaume*, 875 F.3d at 1358.

Our predecessor court's decision in *United States v. Nell* makes clear a district courts' obligations when presented with concrete facts suggesting potential bias. The *Nell* court reversed and remanded for a new trial because the district court failed to adequately question a potentially biased juror. *Id*. at 1230. The juror, Mr. Schane, knew who the defendant was and disclosed that his union previously "had a little problem" with the defendant's union. *Id*. at 1228. The defendant's counsel informed the court that the "little problem" was a riot prompted by a jurisdictional dispute between the two unions, and the conflict between the organizations was an issue in the case. *Id*. The defense moved to strike Schane for cause and alternatively requested that the district court question Schane further about his place in the inter-union conflict, but the district court denied both requests. *Id*. The district court "never went beyond quite general questions regarding Schane's actual association with [the defendant]" and Schane insisted "on several different occasions that he believed he could be impartial." *Id*.

The district court denied the defendant's for-cause challenge to Schane, forcing the defendant to use a peremptory challenge. *Id.* at 1229.

In reversing, the former Fifth Circuit first emphasized that "presumed bias depends heavily on the surrounding circumstances," so when a party attempts to establish presumed bias, "the [district] court has the duty to develop the facts fully enough so that it can make an informed judgment on the question of 'actual' bias." *Id.* (citing *Montelongo*, 507 F.2d at 641). Our predecessor court underscored that "[t]his duty cannot be discharged solely by broad, vague questions once some potential area of actual prejudice has emerged." *Id.* at 1229–30. Turning back to the record, the court explained that "in light of counsel's proffered information about the close connection between Schane's union and [the defendant]'s union . . . , we think the court erred in refusing to question Schane further about the particulars of these matters." *Id.* at 1230. The court declined to "say that Schane was actually prejudiced" based on the record, but it noted that "further questioning might have elicited an admission or have revealed sufficient circumstances . . . so that bias could be presumed." *Id.* The court therefore reversed because the district court "failed to explore Schane's potential bias adequately." *Id.*

Here, too, the district court did not fulfill its investigative obligation. As this Court has concluded, the district court's discovery—after impaneling the jury—that Juror Eight's niece worked for

21-13612               Opinion of the Court               13

Royal Caribbean triggered its duty to investigate the potential bias.[3] *See, e.g.*, *Berthiaume*, 875 F.3d at 1358. But the district court did not do so. It did not place Juror Eight under oath to ask her specific, direct questions about whether she could serve impartially despite her niece's employment by Royal Caribbean. And the district court allowed Juror Eight to deliberate when it could have excused her for cause and still had enough jury members to return a verdict. *See* Fed. R. Civ. P. 48(a) ("A jury must begin with at least 6 and no more than 12 members, and each juror must participate in the verdict unless excused under Rule 47(c)."). Permitting Juror Eight to remain on the jury without questioning her further was an abuse

---

[3] To be clear, the familial relationship at issue here is not a direct one between a juror and a party, but one between a juror and an employee of a party. But that fact does not eliminate the reasonable possibility that bias existed; it merely highlights the need to have a clear record to determine whether implied bias warranted removal. *See United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984) ("A relationship between a juror and a defendant, albeit a remote one, can form the basis of a challenge for cause."); *United States v. Mitchell*, 690 F.3d 137, 146 (3d Cir. 2012) (noting that although "little case law explores the outer boundary of the kinship category" of juror bias, some courts find "implied bias whenever a juror shares '*any* degree of kinship with a principal in a case'" (emphasis added) (quoting *United States v. Brazelton*, 557 F.3d 750, 754 (7th Cir. 2009))). Because the district court did not ask Juror Eight any specific questions about her relationship with her niece or her niece's employment, we have no way of knowing key facts that would confirm or dispel the reasonable possibility of bias. We cannot know, for example, whether Juror Eight's niece is compensated with stock options, works in Royal Caribbean's legal or risk management departments, or gives Juror Eight cruise discounts. Without this specific and direct questioning, we conclude that the district court abused its discretion in allowing Juror Eight to participate in deliberations.

of discretion. *See Nell*, 526 F.2d at 1229–30 ("[T]he court has the duty to develop the facts fully enough so that it can make an informed judgment on the question of 'actual' bias. This duty cannot be discharged solely by broad, vague questions once some potential area of actual prejudice has emerged." (citation omitted)); *Corey*, 625 F.2d at 707 ("Because presumed bias depends entirely on surrounding circumstances, the trial judge must develop the factual circumstances sufficiently to make an informed judgment on the existence of actual bias. Once a party has raised the spectre of potential actual prejudice, specific and direct questioning is necessary to ferret out those jurors who would not be impartial.").

In defense of its decision, the district court pointed to Juror Eight's silence in response to its general question whether anyone could think of a reason they could not be impartial. Royal Caribbean echoes this rationale. The problem is that our precedent in *Nell* rejected that exact argument. In *Nell*, the former Fifth Circuit admonished district courts entertaining claims of implied juror bias "to develop the facts fully enough so that [they] can make an informed judgment," emphasizing that "[t]his duty cannot be discharged solely by broad, vague questions once some potential area of actual prejudice has emerged." 526 F.2d at 1229–30. Indeed, we and our predecessor court have repeatedly rejected the view that general questions can satisfy a district court's duty to explore potential juror bias. *See, e.g.*, *United States v. Bascaro*, 742 F.2d 1335, 1350–51 (11th Cir. 1984) (explaining that the obligation to explore potential bias is not discharged by the general question, "Is there any reason you cannot fairly and impartially try this case?" (quoting

*United States v. Lewin*, 467 F.2d 1132, 1138 (7th Cir. 1972))), *overruled on other grounds by United States v. Lewis*, 492 F.3d 1219, 1221–22 (11th Cir. 2007) (en banc); *Corey*, 625 F.2d at 707 ("Once a party has raised the spectre of potential actual prejudice, specific and direct questioning is necessary to ferret out those jurors who would not be impartial.  Broad, vague questions of the venire will not suffice."); *United States v. Shavers*, 615 F.2d 266, 268 & n.3 (5th Cir. 1980) (holding that a district court's voir dire questions, including one that asked the venire panel generally whether there was any reason they couldn't render an impartial verdict, were "too broad").[4]

The district court also suggested that it could reasonably expect Juror Eight to be impartial because Fylling was not seeking a verdict large enough to put Royal Caribbean out of business or cause Royal Caribbean to fire Juror Eight's niece.  Royal Caribbean makes a similar argument, asserting that "the employment of Juror [Eight's] niece likely held little to no weight in Juror [Eight's] mind."  Maybe, or maybe not—but on the record before us, we can only speculate about facts that might have affected Juror Eight's decision-making.  And such speculation is an inadequate substitute for a complete record.  *See Dyer v. Calderon*, 151 F.3d 970, 976 (9th

---

[4] *Accord Hughes v. United States*, 258 F.3d 453, 461 (6th Cir. 2001) ("We cannot say that an ambiguous silence by a large group of venire persons to a general question about bias is sufficient to support a finding of fact in the circumstances of this case." (quoting *Johnson v. Armontrout*, 961 F.2d 748, 753–54 (8th Cir. 1992))); *Lewin*, 467 F.2d at 1138 (general questions insufficient when potential source of actual prejudice is apparent).

Cir. 1998) (en banc) ("[A] judge investigating juror bias must find facts, not make assumptions . . . ."); *United States v. Gaston-Brito*, 64 F.3d 11, 13 (1st Cir. 1995) ("[I]t was the district court's obligation to develop the relevant facts on the record, not merely presume them."). Without a record speaking to the details of Juror Eight's relationship with her niece or of her niece's employment, we cannot assume that the district court's failure to investigate was harmless. *See Bailey v. Bd. of Cnty. Comm'rs*, 956 F.2d 1112, 1128–29 (11th Cir. 1992) (reversing and remanding for a new trial because, among other reasons, the district court left "inadequately explored" an issue bearing on a juror's ability to be impartial); *Nell*, 526 F.3d at 1230 ("Doubts about the existence of actual bias should be resolved against permitting the juror to serve . . . .").

In sum, when it discovered during trial that one of the jurors had a niece who worked for Royal Caribbean, a party in the trial, the district court was obligated to investigate the matter further and exercise its discretion properly by developing "the facts fully enough so it [could] make an informed judgment on the question of actual bias." *Nell*, 526 F.3d at 1229–30. Because the district court did not conduct such an inquiry, we hold that the district court abused its discretion by failing to make an informed judgment on the question of the Juror Eight's bias and by allowing Juror Eight to deliberate over the objection of Fylling's counsel.

## IV.    CONCLUSION

For all these reasons, we reverse the judgment below and remand for a new trial.

21-13612              Opinion of the Court                    17

**REVERSED AND REMANDED.**