**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Victor G. APODACA, Jr., Defendant-Appellant.**

**No. 81–1096.**

United States Court of Appeals, Fifth Circuit.

Jan. 4, 1982.

Rehearing Denied Feb. 17, 1982.

Before THORNBERRY, TATE and WIL-LIAMS, Circuit Judges.

TATE, Circuit Judge:

The defendant, Apodaca, appeals from his conviction for corporate income tax evasion and for making and subscribing materially false corporate income tax returns. Apodaca raises five issues on appeal: (a) that the jury selection process in the district does not represent a fair cross-section of the community; (b) that certain jurors should have been excused for cause; (c) that certain summary testimony should not have been admitted; (d) that a judgment of acquittal was erroneously denied on one count; and (e) that the prosecutor made improper closing remarks. For the reasons set forth below, we affirm Apodaca's conviction.

Victor Apodaca was charged in August 1980 with a ten-count indictment[1] for income tax evasion. The government's motion to dismiss Count Ten was granted;[2] the jury returned a verdict of not guilty on the three counts of personal income tax fraud;[3] and the jury returned a verdict of guilty on the three counts of corporate income tax evasion (26 U.S.C. § 7201)[4] and the three counts of willfully making and subscribing materially false corporate income tax returns (26 U.S.C. § 7206(1)).[5] After the jury returned a verdict of guilty, the district court sentenced the defendant to three years on each of the six counts, to

Charles Louis Roberts, El Paso, Tex., Stewart W. Forbes, Scott E. Segall, El Paso, Tex., for defendant-appellant.

LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., John F. Murray, Atty., Michael L. Paup, Robert E. Lindsay, James P. Springer, Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

1. *Counts One through Three*: Willfully attempting to evade the corporate taxes of Victor Apodaca Enterprises, Inc., for the fiscal years ending February 29, 1976, February 28, 1977, and February 28, 1978 [26 U.S.C. § 7201].

   *Counts Four through Six*: Willfully making and subscribing materially false corporate income tax returns for Victor Apodaca Enterprises, Inc., for the same three years [26 U.S.C. § 7206(1)].

   *Counts Seven through Nine*: Willfully making and subscribing materially false joint personal income tax returns for the respective calendar years 1975, 1976, and 1977 [26 U.S.C. § 7206(1)].

   *Count Ten*: Knowingly presenting to the Treasury Department of the United States a false claim for refund [18 U.S.C. § 287].

2. Count Ten, see note 1, *supra*.

3. Count Seven—Nine, see note 1, *supra*.

4. Count One—Three, see note 1, *supra*.

5. Count Four—Six, see note 1, *supra*.

be served concurrently on all counts except Count Three, and imposed two consecutive fines of $10,000 each for Counts One and Two. On Count Three, the district court then suspended the execution of the consecutive sentence on five years probation and imposed a $10,000 fine. It is from this conviction that Apodaca appeals.

### A. Jury Selection Process

Apodaca contends on appeal that the jury selection process in the El Paso Division of the Western District of Texas is unlawful. He makes the argument that the selection process violates both the Sixth Amendment right to an impartial jury and the statutory requirements under 28 U.S.C. §§ 1861–1874, designed to assure random selection from a fair cross-section of the community. As one basis of this complaint, Apodaca alleges that there is a significant underrepresentation of Hispanic surnamed individuals on the Master Jury List, due to the fact that the sole source of the jury list is the voter registration list and Hispanic-Americans traditionally register to vote in fewer numbers than other recognizable groups. This contention was answered adversely to Apodaca in *United States v. Brummitt*, 665 F.2d 521, at 527–530 (5th Cir. 1981), a companion case decided by the court this term.[6]

Apodaca claims that his argument may be distinguished from that in *Brummitt* in that additionally he claims a disparity in the number of young people (i.e., persons in the 18 to 35 year old age group) on the jury lists.[7] He alleges that the combination of these two issues produces a greater violation of the requirement that grand and petit juries be representative of a cross-section of the community. 28 U.S.C. §§ 1861, 1862.

Apodaca introduced evidence by affidavit and at the hearing on his motion to dismiss the indictment that, according to the 1970 census, 53.2% of the gross general population of El Paso County were in the category of "Spanish surname and language," while only 42.3% of his sampling of 500 names taken from the qualified jury wheel had Hispanic surnames.[8] Additional testimony was elicited to the effect that certain minorities (including Hispanics) are believed to have been undercounted on the census and that a figure of 6.9% should be added to the 53.2% that appears in the actual census figures. Using such statistics, the absolute disparity of Hispanics on grand and petit juries in El Paso County is alleged to be 17.8% (53.2% + 6.9% (correction %) – 42.3% = 17.8%). Apodaca then argues that this disparity results from the fact that the jury wheel is taken exclusively from the voter registration list and that Hispanic Americans traditionally register to vote in fewer numbers. Accordingly, Apodaca argues that under the situation he presents, 28 U.S.C. § 1863(b)(2)[9] would require that sup-

---

**6.** The statistical evidence in the present case is similar, but not identical, to that presented in *U.S. v. Brummitt*, at 527, due to the adjustment figure and random sampling method used by the expert witnesses in the present case. See text and note 8, *infra*.

**7.** In his motion to dismiss the indictment, the defendant alleged underrepresentation of Hispanics, young people and women. In the order overruling the motion, the district court stated that the defendant's claim with respect to the underrepresentation of women was withdrawn and was not before the court. The defendant, while arguing on appeal the underrepresentation of women, did not contest the district court's failure to rule on this point; therefore, we consider only the defendant's argument relative to Hispanics and young people.

**8.** Sperlich, an expert witness, testified that to provide these figures he relied on the 1970 census (with a correction factor of 6.9%) and

the jury wheel of the El Paso Division. He randomly selected an overall sample of 500 names from the qualified jury wheel and statistically estimated a percentage of Hispanic surnamed individuals and young people in the master jury wheel. [Affidavit of Peter W. Sperlich].

**9.** 28 U.S.C. § 1863(b). Among other things, such plan shall—

   \*    \*    \*    \*    \*    \*

   (2) specify whether the names of prospective jurors shall be selected from the voter registration lists or the lists of actual voters of the political subdivisions within the district or division. The plan shall prescribe some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights secured by sections 1861 and 1862 of this title. The plan for the District of Columbia may require the names of prospective jurors to be

plemental lists be used as a source for the master jury list.

The statistics presented to the district court concerning the underrepresentation of young people are similar. Evidence was introduced by affidavit and at the hearing that the general population of El Paso County contains 46.8% of persons age 18–35, while the 500 person sample drawn from the jury list contained only 28.2%, or an absolute disparity of 18.6%.[10]

■ The claims raised by Apodaca are essentially the same as in *United States v. Brummitt, supra,* 665 F.2d at 527 (1981), which involved challenges to the El Paso County jury selection process only on the basis of an underrepresentation of Hispanics. As in *Brummitt,* the defendant here alleges that section 1863(b)(2) of the Jury Selection and Service Act of 1968 (28 U.S.C. § 1861 et seq.) has been violated by the exclusive use of the voter's registration list. As in *Brummitt,* the defendant here presented only evidence that tended to establish that there is a disparity between the proportion of Hispanic-Americans and young people in the *gross* general population and the proportion of those selected on the master jury list. The record is totally devoid of any evidence that would tend to establish the percentage in either identifiable class who are *eligible* to serve as jurors.

For the reasons fully discussed in *United States v. Brummitt, supra,* 665 F.2d at 530 (1981), we find that, on the record before us, Apodaca has failed to establish a prima facie case of substantial non-compliance with the statutory or constitutional requirements.[11] We, therefore, affirm the denial of Apodaca's motion to dismiss the indictment.

### B. Juror Challenge for Cause

As his second point of error, Apodaca contends that the trial court erred in refusing to excuse for cause two jurors. Both prospective jurors were subsequently struck by the defendant, using up his peremptory challenges (an action which Apodaca alleges caused him to be unable to peremptorily challenge two jurors who were unacceptable).

During the general voir dire the district court asked for a show of hands of prospective jurors who had some exposure to pre-trial publicity.[12] Mrs. Jean Eberle, having indicated that she had heard of the case in the newspaper, was questioned individually by the court. During this examination, juror Eberle brought out the following points on which the defendant based his challenge for cause: (1) that she had worked for the FBI; (2) that her husband (now retired) had worked for the FBI 30 years; (3) that she "knew how much investigation went into a case before presentment to a grand jury;" and (4) that if all things were equal, she might be human enough to give a little more credence to the prosecution based on this knowledge.

The district court and the defense counsel then questioned Mrs. Eberle concerning specific things she may have read about the case and her ability to remain impartial in light of the fact that the case had been initiated and prepared by the FBI. During the voir dire Eberle responded that she had not discussed the case with her husband and

---

selected from the city directory rather than from voter lists. The plans for the districts of Puerto Rico and the Canal Zone may prescribe some other source or sources of names of prospective jurors in lieu of voter lists, the use of which shall be consistent with the policies declared and rights secured by sections 1861 and 1862 of this title.

10. Additionally, the affidavits indicated that in the 18–30 year old group, the general population test group contained 37.9% and the sample contained 21.0% (or a 16.9% absolute disparity); that in the 18–25 year old group, the general population test group contained 24.1%

and the sample contained 12.4% (or a 11.7% absolute disparity).

11. We reiterate, as we stated in *U.S. v. Brummitt,* 665 F.2d 521 at 528, n.10 (1981), that when a prima facie case of jury discrimination is established, supplementation of the voter list with "some other source or sources of names in addition to voter lists" is mandatory. 28 U.S.C. § 1863(b)(2).

12. Defendant requested permission to examine jurors individually upon voir dire due to pre-trial publicity. (See Doc. 14).

was not cognizant of much concerning the case. She answered, responding to the court's inquiry, that she could set aside anything she remembered and base her decision on the evidence presented. Mrs. Eberle responded that she would not resent any stringent cross-examination of FBI witnesses, that her frame of mind concerning the case was fair and impartial, and that she did not know either of the proposed FBI agent witnesses.

The defendant strongly contends that juror Eberle, while honest with the court concerning her assertions that she would rely on the evidence, was not asked specifically if she could set aside her stated tendency to favor the prosecution in this case, based on her prior association with the FBI. Apodaca argues that as she openly admitted her prejudice the court need not merely suspect bias, but had clear evidence of it. Relying on *United States v. Corey*, 625 F.2d 704 (5th Cir. 1980), *cert. denied*, 450 U.S. 925, 101 S.Ct. 1377, 67 L.Ed.2d 354 (1981) and *United States v. Nell*, 526 F.2d 1223 (5th Cir. 1976), the defendant claims that even if Eberle's responses did not absolutely establish her bias in the eyes of the court (as he argues it did in this case), a substantial doubt concerning actual prejudice was raised, and any such doubt "should be resolved against permitting the juror to serve, unless the prospective panelist's protestation of a purge of preconception is positive, not pallid." *Nell, supra*, 526 F.2d at 1230. Apodaca urges on appeal that juror Eberle's responses were noncommittal at best, but could not be considered "positive."

■ The Sixth Amendment entitles a defendant to an impartial jury which will render a verdict based exclusively upon the evidence presented in court and not on outside sources. *Irvin v. Dowd*, 366 U.S. 717, 711–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961). This right is principally implemented through the system of challenges exercised during the voir dire of prospective jurors. *Nell, supra*, 526 F.2d at 1229. The judge has broad discretion in the conduct of

the voir dire, subject to the essential demands of fairness that require that prejudice would be discovered if present. *Corey, supra*, 625 F.2d at 707; *Nell, supra*, 526 F.2d at 1229. If "actual prejudice" is shown, the court must grant a challenge for cause. *Corey, supra*, 625 F.2d at 707; *Nell, supra*, 526 F.2d at 1229. The determination as to the impartiality of a juror generally is committed to the discretion of the trial judge and will not be reversed absent an abuse of his discretion. *United States v. Salinas*, 654 F.2d 319, 328 (5th Cir. 1981); *United States v. Martinez*, 604 F.2d 361, 364 (5th Cir. 1979), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980).

■ Allowing the defendant to challenge Mrs. Eberle for cause certainly would have been reasonable and prudent under the circumstances before us. This court recognizes that some place along the line we must know, no matter what a witness says, that he or she has an institutional bias he cannot overcome. However, in this limited circumstance, in view of the fact that the proposed FBI witnesses *did not appear before the jury*, coupled with Mrs. Eberle's response that she could be impartial,[13] and viewing the overall voir dire, we are not prepared to say that the district court actually abused its discretion in denying the challenges for cause.

■ Additionally, Apodaca challenged juror Stonecipher for cause. Mr. Stonecipher, an accountant, qualified to practice before the IRS, responded that he would be inclined to measure any testimony about certain tax concepts against his own expertise, that he considered himself competent to interpret the Internal Revenue Code and regulations, and that it might take more evidence than with a layman to overcome his own beliefs about the interpretation.

Apodaca argues that this testimony was evidence which establishes an "actual bias," requiring the court to grant a challenge for cause. However, in the remainder of his

---

**13.** We recognize that self-serving statements of impartiality must often be given little weight. *Irvin v. Dowd*, 366 U.S. 717, 728, 81 S.Ct. 1639, 1645, 6 L.Ed.2d 751 (1961).

examination, Stonecipher answered that he had no opinion on the guilt or innocence of the defendant, that he did not believe the IRS's interpretation of the revenue 'code is necessarily correct, that the defendant is innocent until proven guilty and has no burden of proof, that he could render a decision based on the evidence produced at trial, and that he could follow the judge's instructions as to the law. As with juror Eberle, on the "overall examination" of the prospective juror, *Corey, supra,* 625 F.2d at 708, we do not find that the trial court abused its broad discretion.

## C. Summary Witness Hughes

Apodaca asserts that the trial court erred in allowing the introduction of certain summary charts into evidence.

Special Agent Hughes, the chief IRS agent in charge of this prosecution, testified as a summary witness for the government concerning computations for deciding proper deductions, taxable income and taxes owing thereon. Hughes used summary charts, which included computations based on previous testimony and documents admitted into evidence.

The defendant objects to the use of certain summary charts (designated as Exhibits 119, 120, 121, 123, 124) on the grounds that the charts were not prepared by Hughes and were inaccurate and misleading.

Hughes testified concerning a computation of profits of Victor Apodaca Enterprises, Inc. for the year under question, Exhibit 123. Hughes testified that while the chart was prepared under his direction, he had not done the computations personally. The defendant objected to the introduction of this chart into evidence as unreliable hearsay not subject to proper cross-examination

because the person who did the actual computations was not on the stand. The court sustained the defense objection to the chart, but allowed Hughes to be questioned on the computations as having been adopted as his own.

Three additional charts (Exhibits 119, 120, and 121) [14] were admitted into evidence without any specific objection by the defendant. The only objection offered was "the one previously made" to Exhibit 123, that the computations were not made by Hughes personally. The court allowed the introduction of all three exhibits with the reservation that the defendant's objection applied to only one of the charts (Exhibit 121). The last chart at issue, Exhibit 124,[15] was admitted without any objection.

The defendant's argument then tends to apply only to Exhibit 121, a summary of what the government alleged to be the personal unreported income of Apodaca for the particular years in question.

■ While we recognize the problems associated with permitting the presentation of a summary of the evidence in a criminal case, *see United States v. Scales,* 594 F.2d 558 (6th Cir.), *cert. denied,* 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979); *Flemister v. United States,* 260 F.2d 513, 517 (5th Cir. 1958); *Lloyd v. United States,* 226 F.2d 9 (5th Cir. 1955), *Steele v. United States,* 222 F.2d 628, 630 (5th Cir. 1975),[16] we cannot find, on the record before us, that the introduction of this exhibit was reversible error. The record does not clearly reflect whether or not Hughes was assisted on Exhibit 121 (as he stated he *had* been with Ex. 123, which was not admitted into evidence); the defendant was acquitted on all charges related to his personal income tax returns; [17] and considering the record, as a whole, we are convinced that there was no

---

14. Exhibits 119 and 120 concern gross receipts and expenses for Victor Apodaca Enterprises, Inc. Exhibit 121 concerned Apodaca's personal expenses.

15. Exhibit 124 concerned taxable income for the corporation.

16. A witness's attempt to evaluate the evidence enables the government to invade the province of the jury. *Steele v. U.S.,* 222 F.2d at 630.

17. See note 1, *supra,* Counts 7–9.

reasonable possibility that any error in admitting Exhibit 121 contributed to Apodaca's conviction. *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *Null v. Wainwright*, 508 F.2d 340, 343 (5th Cir.), *cert. denied*, 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1975). Additionally, the defendant was allowed to fully cross-examine the witness, in front of the jury, concerning any errors and inconsistencies in the computations and testimony. The jury was plainly able to see and weigh any mistakes made.

### D. Erroneous Denial of Acquittal on Count III

The jury returned a verdict of guilty for willfully attempting to evade the corporate taxes (26 U.S.C. § 7201) of Victor Apodaca Enterprises, Inc., for the fiscal years ending February 29, 1976, February 28, 1977, and February 28, 1978. Apodaca was sentenced to three years imprisonment on each count, to be served concurrently. As to Count III, the district court suspended execution of the prison sentence on five years probation and imposed a $10,000 fine. The indictment charged that the taxable income of the corporation for this fiscal year was substantially in excess of the $32,519.00 reported.

Apodaca asserts that his motion for a judgment of acquittal on Count III should have been granted because there was no tax owing for that year as there were additional deductions available to the company. In particular, the defendant claims that the corporation borrowed approximately $110,000 during the fiscal years ending February 28, 1977 and 1978 to pay bond forfeitures for which that corporation was liable. Consequently, he claims a business deduction for the *entire amount* for the year in which the funds were borrowed. The government, while not challenging the validity of the deductions, argues that these bond forfeitures were deductible only to the extent

of the payments *actually made* on the loans during the applicable fiscal year.

The corporation's status as a "cash basis"[18] taxpayer is undisputed. As such, Apodaca claims entitlement to a deduction for ordinary and necessary business expenses when paid,[19] although paid with borrowed funds. *Crain v. Commissioner of Internal Revenue*, 75 F.2d 962, 964 (8th Cir. 1935). According to the testimony of the accountant who prepared the 1978 return, the deductions were not correctly calculated (deductions to the extent of actual payments to the surety were claimed on the return) but the total amount paid by the surety company to the court must now be recognized under the correct accounting method as clearly deductible business expenses *paid by Apodaca* during fiscal year 1978.

█ The defendant concedes that the facts are uncontested and that the allowance or disallowance of this deduction is a question of law. Victor Apodaca Enterprises, Inc. contracted with Surety Insurance Company to secure payment of bond forfeitures, making Surety primarily liable to the court for the posted bond. *Caldwell v. Stevenson*, 567 S.W.2d 278 (Tex.Civ.App.—Austin 1978, no writ). When Surety paid the bond forfeitures in question it was paying an obligation under the contract; the funds were not advanced as a loan to Apodaca. See *Zoby v. United States*, 364 F.2d 216 (4th Cir. 1966).

Consequently, the corporation is only entitled to a deduction for the payments *actually made to the surety* during the fiscal year ending February 28, 1978.

### E. Improper Closing Argument by the Government

Finally, Apodaca complains that the district court erroneously denied his motion for a new trial based on improper prosecutorial closing arguments. Specifically, the defendant argues that the government com-

---

18. Internal Revenue Code § 446(c)(1), 26 U.S.C. § 446(c)(1).

19. Treasury Reg. § 1.461–1(a), 26 C.F.R. § 1.461–1(a).

mented on his personal tax returns for the years in question despite the fact that earlier in the trial the court had sustained a government motion to exclude any evidence of the defendant's actual personal tax liability for those particular years as irrelevant.

Apodaca had sought to introduce, on the issue of willfulness and intent, evidence that he would have owed no personal taxes. The government's objection to this evidence was sustained. Consequently, the defendant objected to the government's reference to the personal tax returns in its closing argument. The trial court sustained this objection and instructed the jury to disregard any remarks directed to that subject.

While we will not condone the prosecutor's attempt to argue information which it had expressly denied the defendant an opportunity to develop, in view of the trial court's curative instruction to disregard, we find that this was harmless error.[20] *United States v. Georgalis*, 631 F.2d 1199, 1203 (5th Cir. 1980) (correcting instruction curing impermissible questioning); *United States v. Wilkinson*, 601 F.2d 791, 797 (5th Cir. 1979).

For the reasons stated above, we find no merit in the points of error raised by the defendant in this appeal, and, therefore, AFFIRM Apodaca's conviction.

AFFIRMED.

---

20. We note also that the jury acquitted Apodaca on all charges related to his personal income tax returns (Counts 7–9). See note 1, *supra*.