**UNITED STATES of America,**

v.

**Lea W. FASTOW, Defendant.**

**No. CR. H–03–150.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 19, 2003.

See, also, 269 F. Supp.2d 905.

---

Linda Lacewell, Michael Pauze, United States Dept of Justice, Crim Div/Fraud Sec, Washington, DC, for United States of America.

Mike De Guerin, Sr., Paul C. Nugent, Foreman Degeurin & Nugent, Houston, TX, Nanci L. Clarence, Clarence, Snell et al., San Francisco, CA, Andrew L. Jefferson, Jr., Attorney at Law, Houston, TX, for Defendant.

## ORDER

HITTNER, District Judge.

Pending before the Court are Defendant Lea Fastow's Motion for Change of Venue and Motion for Individual Voir Dire. Having considered the motions, submissions, and applicable law, the Court determines that Defendant's motions should be denied.

## BACKGROUND

On April 30, 2003, the United States of America filed a six-count indictment against Lea Fastow, charging her with conspiracy to commit wire fraud and defraud the United States, money laundering conspiracy, and four counts of filing a false income tax return. From 1991 to 1997, Lea Fastow held various positions at Enron Corporation, including Director and Assistant Treasurer of Corporate Finance. The alleged schemes to defraud Enron and its shareholders, as well as the United States, occurred both during and after Fastow's employment with Enron. The indictment alleges that both Michael Kopper, who held various positions at Enron from 1994 to 2001, and Andrew Fastow, Enron's Chief Financial Officer and Lea Fastow's husband, were coconspirators in the alleged activities.

Lea Fastow filed the instant motions on October 1, 2003, requesting a change of venue from Houston to a district other than the Southern District of Texas, as well as a jury questionnaire [1] and individual voir dire of potential jurors wherever the trial is held. The United States timely

---

1. On October 24, 2003, the Court ordered that a juror questionnaire was appropriate in the captioned matter, and counsel for both parties were instructed to submit a joint juror questionnaire no later than Friday, November 21, 2003. Where there was disagreement as to questions, the Court directed the parties to note the disagreement within the joint questionnaire, together with each party's suggested resolution of the disagreement.

responded on October 17, 2003. The Court conducted a hearing on the motions on October 29, 2003, wherein counsel for both parties addressed various issues related to change of venue and jury selection.

## MOTION FOR CHANGE OF VENUE

Mrs. Fastow contends that a number of factors support a change of venue. At the hearing on the instant motions, her counsel argued that a presumption of prejudice had been established based on pretrial media coverage. In support of this argument, Mrs. Fastow submitted numerous newspaper articles, along with two video tapes documenting both her and her husband's arrest and arraignment.

Comparing her motion for change of venue to those filed by Timothy McVeigh and Terry Nichols in the Oklahoma City bombing case, Mrs. Fastow further argues that in addition to excessive publicity, the Houston community has been uniquely affected by the collapse of Enron. She explains that there are a wide range of victims, including not only those who owned stock in Enron or lost their jobs based on the fall, but also creditors owed money by Enron, area merchants whose businesses have suffered, local charities, and civic organizations. Thus, because Enron had such pervasive effects on the Houston community, Mrs. Fastow contends that her case is detrimentally affected by media prejudice, as well as community prejudice. In connection with this, Mrs. Fastow posits that because she is the first individual scheduled to have an Enron trial in this community, "[s]he may well bear the initial brunt of local incense over the company's collapse."

In its response, the Government disagrees that a change of venue is warranted. Concerning the numerous articles submitted by Mrs. Fastow, the Government points out that most of the stories do not even mention her. The Government further argues that because the scope of her indictment is limited, stories about Enron-related matters, which do not mention Mrs. Fastow's case, do not provide support for her motion for change of venue. Finally, the Government contends that Houston, as the United States' fourth largest city, provides a sizable jury pool from which twelve fair and impartial people can be found to sit on the jury in the captioned matter.

## ANALYSIS

Mrs. Fastow filed the instant motion for change of venue pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, which provides that "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." FED. R. CRIM. P. 21(a).[2] "This rule vests substantial discretion in the district court as to the granting or denying of such a motion . . . ." *United States v. Parker*, 877 F.2d 327, 330 (5th Cir.1989); *see also United States v. Harrelson*, 754 F.2d 1153, 1159 (5th Cir.1985) ("As the words of the rule imply, that decision is one committed to the sound discretion of the trial court.")

2. During the hearing, Defendant's counsel suggested New Orleans, Austin, Denver, and New York City as possible locations in other districts to transfer the captioned matter. Counsel additionally suggested the Galveston Division of the Southern District of Texas, which would require an intra-district transfer pursuant to Rule 18 of the Federal Rules of Criminal Procedure. However, a transfer pursuant to Rule 18 was not raised in Defendant's motion.

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (citations omitted). "[W]here a [defendant] adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community, '(jury) prejudice is presumed and there is no further duty to establish bias.'" *Mayola v. Alabama,* 623 F.2d 992, 997 (5th Cir.1980) (quoting *United States v. Capo,* 595 F.2d 1086, 1090 (5th Cir.1979)) (additional citations omitted). Additionally, as to prejudice in the community, "[w]here outside influences affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial." *Pamplin v. Mason,* 364 F.2d 1, 5 (5th Cir.1966). However, the "principle of presumptive juror prejudice is only 'rarely' applicable ... and is confined to those instances where the petitioner can demonstrate an 'extreme situation' of inflammatory pretrial publicity that literally saturated the community in which his trial was held." *Mayola v. Alabama,* 623 F.2d at 997.

■ Notoriety of a case alone does not indicate that a change of venue is warranted. The Fifth Circuit previously noted that "[e]xposure to pretrial publicity ... does not necessarily destroy a juror's impartiality. Consequently, a change of venue should not be granted on the mere showing of widespread publicity." *Parker,* 877 F.2d at 330 (citations omitted); *see also Irvin,* 366 U.S. at 722, 81 S.Ct. 1639

("It is not required, however, that the jurors be totally ignorant of the facts and issues involved.") As the Fifth Circuit has explained:

> If, in this age of instant, mass communication, we were to automatically disqualify persons who have heard about an alleged crime from serving as a juror, the inevitable result would be that truly heinous or notorious acts will go unpunished. The law does not prohibit the informed citizen from participating in the affairs of justice. In prominent cases of national concern, we cannot allow widespread publicity concerning these matters to paralyze our system.

*Calley v. Callaway,* 519 F.2d 184, 210 (5th Cir.1975). Thus, under the law of this circuit, the district court need not ensure that the jury panel be made up of individuals who have no preconceived opinions about a defendant, but individuals who have such opinions must be able to "'lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *United States v. Lipscomb,* 299 F.3d 303, 344 (5th Cir.2002) (quoting *Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)).

■ In her motion, as well as during the hearing, Mrs. Fastow contends that she has established a presumption of prejudice such that her trial should be transferred out of the Southern District of Texas. In support of this assertion, Mrs. Fastow submitted numerous articles detailing various aspects of the collapse of Enron and related legal matters. She also notes that Enron had a devastating impact on all of Houston and its citizens.[3] During the hearing, Mrs. Fastow's counsel argued that because of the effects of Enron's col-

---

**3.** In her motion, Mrs. Fastow names numerous victims. As discussed earlier, she includes local merchants and charities. She also describes a series of articles in the Hous-

ton Chronicle, entitled "The Faces of Enron," which describes the personal hardships of various ex-Enron employees.

lapse, the people of Houston have already reached a conclusion as to the guilt of those involved. Additionally, Mrs. Fastow claims that the Government itself has generated negative publicity toward both Mr. and Mrs. Fastow in press conferences regarding their individual cases. Furthermore, she argues the Government orchestrated a "perp walk,"[4] instead of allowing the Fastows to appear on a summons or surrender to the court.

Based upon a review of all of the evidence and argument submitted by Mrs. Fastow, the Court determines that a presumption of prejudice has not been established. Many of the articles submitted by Mrs. Fastow do not even mention her or the captioned matter.[5] When she is discussed, the coverage mainly refers to her indictment or court proceedings related to her case. "The presumption [of juror prejudice] is generally not applied to cases in which the news accounts complained of are 'straight news stories rather than invidious articles which would tend to arouse ill will and vindictiveness.'" *United States v. O'Keefe,* 722 F.2d 1175, 1181 (5th Cir. 1983) (quoting *Calley,* 519 F.2d at 206).

Mrs. Fastow also refers to negative publicity generated by the Government. She claims that various members of the Department of Justice and the Enron Task Force violated the Free Press–Fair Trial Guidelines, 87 F.R.D. 519, 525 (1980),[6] during press conferences by discussing Mrs. Fastow's case, as well as her husband's. At one press conference regarding Mr. Fastow by Enron Task Force member Andrew Weissmann, she argues that Mr. Weissmann unfairly created the impression that Mr. Fastow was a flight risk by discussing the various items confiscated for bond purposes. Mrs. Fastow additionally claims that the Government refused to let her surrender so that the media could cover her being escorted by law enforcement officials in handcuffs (the "perp walk").

After a review of all of the evidence related to this claim, the Court does not find any violative conduct by the Government. All statements made by the Government were relevant and appropriate to the issues they were discussing at the time—indictment and conditions of bond.[7] Moreover, concerning the "perp walk," the decision to handcuff Mrs. Fastow is entire-

---

4. Perp is slang for perpetrator, meaning "[a] person who commits a crime or offense." BLACK'S LAW DICTIONARY 1161 (7th ed.1999). The "perp walk" occurs "when an accused wrongdoer is led away in handcuffs by the police to the courthouse, police station or jail ...." *Caldarola v. County of Westchester,* 343 F.3d 570, 572 (2d Cir.2003).

5. The Court notes that another circuit has recognized that "when publicity is about the event, rather than directed at individual defendants, this may lessen the prejudicial impact." *United States v. Hueftle,* 687 F.2d 1305, 1310 (10th Cir.1982) (citing *United States v. Evans,* 542 F.2d 805, 812 (10th Cir. 1976)); *see also United States v. Neal,* 718 F.2d 1505, 1510–11 (10th Cir.1983) (finding no abuse of discretion in denying a change a venue where publicity was not directed at the individual defendant).

6. *See also* Local Criminal Rule 23.1 (2000) (adopting the Free Press–Fair Trial Guidelines of the Judicial Conference of the United States).

7. The Court notes that the Defendant's counsel released a statement to the press at the time of her indictment: "Lea Fastow is innocent. Mrs. Fastow has done nothing wrong, and she had nothing to do with the fall of Enron. Mrs. Fastow is being charged in order to put pressure on her husband of 18 years, Andy Fastow. These tactics are unfair and unjust. These charges have no merit." (Statement of Nanci L. Clarence and Andrew L. Jefferson, legal counsel for Lea Fastow, May 1, 2003, *available at* http://www.prnewswire.com).

ly within the province of the law enforcement agency that took her into custody, and the Court will not second guess that decision.

During the hearing, counsel for Mrs. Fastow alluded to surveys that had been conducted. From those surveys, counsel quoted various figures such as an 84% saturation rate in the city of Houston and a 54% saturation rate in the Galveston Division of the Southern District of Texas. Counsel explained that these figures represent the percentage of individuals surveyed who had heard about the case. The Court cannot be entirely certain whether the figures were applicable to Mrs. Fastow's case, that of her husband's, or Enron generally, as no surveys or case studies were provided to the Court. Such evidence, if properly submitted for examination by the Court, as well as the Government, would have been considered, as it was considered in the motions for change of venue in the Oklahoma City bombing case. *United States v. McVeigh,* 918 F.Supp. 1467, 1471–73 (W.D.Okla.1996). However, such evidence is not properly before the Court and will not be considered.[8]

The Court determines that Mrs. Fastow has not satisfied her burden of demonstrating pretrial publicity so inflammatory that it establishes a presumption of prejudice. Issues regarding the media cover-

age of her case and possible community prejudice can be dealt with during jury selection—both with the juror questionnaire and voir dire. Moreover, not only is Houston a large metropolitan area, the region that comprises the Houston Division of the Southern District of Texas is much broader than that of just the city of Houston and Harris County. The Houston Division encompasses thirteen diverse counties.[9] Given this wide pool of potential jurors and appropriate jury selection safeguards, the Court is confident that a fair and impartial jury can be impanelled within the Southern District of Texas. Thus, the Defendant's Motion for Change of Venue is denied.

## MOTION FOR INDIVIDUAL VOIR DIRE

Mrs. Fastow additionally requests that the Court allow individual voir dire[10] wherever the trial may be held. She contends that "[i]n cases where publicity or other factors raise a 'significant possibility of prejudice,' individual voir dire is preferred or even required." Based on the prejudicial factors described in her motion for change of venue, Mrs. Fastow explains that the voir dire must be sufficient so that the Court may determine the impartiality of each juror. During the hearing, counsel for Mrs. Fastow further stressed the need for individual voir dire, suggesting that

8. The Court notes that even if it were to consider the evidence presented by Defendant's counsel at the hearing, it only demonstrates that many people have heard of the captioned matter or other Enron-related matters. As discussed earlier, under the applicable case law, "[i]t is not required ... that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some

impression or opinion as to the merits of the case." *Irvin,* 366 U.S. at 722, 81 S.Ct. 1639.

9. The counties included in the Houston Division of the Southern District Texas are as follows: Austin, Brazos, Colorado, Fayette, Fort Bend, Grimes, Harris, Madison, Montgomery, San Jacinto, Walker, Waller, and Wharton.

10. The specific process that Mrs. Fastow requests is that each of the members of the venire be removed from the panel and questioned individually by the attorneys out of the presence of the rest of the panel.

jurors, during a typical voir dire with questioning in front of the entire venire, may be reluctant to reveal their true feelings and may only provide answers that the individual juror thinks the panel or Court would anticipate hearing.

In its response, the Government states that a thorough voir dire of the panel of potential jurors, together with a juror questionnaire, would be a sufficient method to eliminate those individuals that cannot be impartial. Thus, the Government agrees that the Court should utilize a juror questionnaire, supplemented by a thorough and searching voir dire. As to the scope of the voir dire, specifically the allowance of individual voir dire, Government counsel states that it is within the Court's discretion and would defer to the Court's ruling.

### ANALYSIS

■ "A trial court has broad discretion in conducting a voir dire and assessing any prejudice held by a potential juror." *United States v. Allred,* 867 F.2d 856, 869 (5th Cir.1989) (citing *United States v. Apodaca,* 666 F.2d 89 (5th Cir.1982)); *see also Mu'Min v. Virginia,* 500 U.S. 415, 427, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991) ("[O]ur own cases have stressed the wide discretion granted to the trial court in conducting *voir dire* in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias. Particularly with respect to pretrial publicity, we think this primary reliance on the judgment of the trial court makes good sense."). "The court may examine prospective jurors or may permit the attorneys for the parties to do so." Fᴇᴅ. R. Cʀɪᴍ. P. 24(a)(1). If the court chooses to examine the prospective jurors, it must permit the attorneys to either ask further questions of the potential jurors if the court considers them to be proper or allow the attorneys to submit additional questions that the court may

ask if it considers them appropriate. *Id.* at (2)(A) and (B).

Mrs. Fastow directs the Court to cases in which she contends that there was a reversal by the Fifth Circuit due in part to the failure of the district court to conduct individualized voir dire. However, a review of the case law cited by Mrs. Fastow demonstrates that the law of this circuit requires a thorough voir dire of the prospective jurors and a determination by the court as to the individual juror's impartiality in cases where pretrial publicity may impact a potential juror's impartiality. *See, e.g., United States v. Beckner,* 69 F.3d 1290 (5th Cir.1995) (describing as an acceptable procedure for district courts to follow is to "ask jurors what information they have received, ask responding jurors about the prejudicial effect of such information, and then independently determine whether such information has tainted jurors' impartiality") (citing *United States v. Davis,* 583 F.2d 190 (5th Cir.1978)).

In each of the cases cited by the Defendant, the district court somehow failed in its duty to make an independent determination of each potential juror's possible impartiality and performed what one appellate court called a "cursory questioning by the court." *Davis,* 583 F.2d at 196; *see also Beckner,* 69 F.3d at 1294 ("By allowing jurors to decide their own impartiality, the district court failed to fulfill its obligation under *Davis* to make an *independent* determination of the impartiality of each juror. Thus, we conclude that the district court's voir dire was insufficient to provide a reasonable assurance that prejudice would be discovered if present.") (emphasis in original); *United States v. Hawkins,* 658 F.2d 279, 285 (5th Cir.1981) ("[T]his Court is compelled to conclude that, in light of the nature and extent of the pretrial publicity surrounding this case, and the fact that forty-eight of the

fifty-six potential jurors acknowledged some exposure to the publicity, the district court's abbreviated treatment of this issue simply does not afford 'a reasonable assurance that prejudice would (have been) discovered if present.' ") (citations omitted). Despite the Court's denial of Mrs. Fastow's motion for change of venue, the Court acknowledges the presence of pretrial publicity in this matter and intends to conduct an extensive and detailed examination of the jury panel.

In *Beckner*, the Fifth Circuit explained:

A defendant's right to an impartial jury includes the right to an adequate voir dire to identify unqualified jurors. In *United States v. Davis*, we examined the elements of an adequate voir dire when the jury venire has been exposed to potentially prejudicial pretrial publicity. Because jurors exposed to pretrial publicity are in a poor position to determine their own impartiality, we held that district courts must make independent determinations of the impartiality of each juror. Though we refused to establish an inflexible rule, we described an acceptable procedure for district courts to follow when making such a determination: the district court should ask jurors what information they have received, ask responding jurors about the prejudicial effect of such information, and then independently determine whether such information has tainted jurors' impartiality. While examination of each juror out of the presence of the other prospective jurors is sometimes preferable, it is not necessarily required.

*Beckner*, 69 F.3d at 1291–92 (citations omitted). The Court intends to employ a procedure with even more safeguards to determine impartiality of jurors. As provided in the Court's order of October 24, 2003, the Court is allowing a juror questionnaire, which will be completed by potential jurors in advance of trial.[11] The Court will then confer with counsel for both parties, wherein the parties may agree to dismiss potential jurors based on the answers provided in their questionnaires.[12]

At the time of jury selection, the Court may elect to employ a hybrid procedure, somewhat similar to the one described in *United States v. Parker*, 877 F.2d at 331. The Court will question the entire panel about various matters in order to reveal any possible prejudice. Because many of the jurors with obvious prejudices will have been excused as a result of the juror questionnaire and pre-trial conferencing, the Court anticipates that it will elicit fewer volatile responses, which might jeopardize the sanctity of the entire panel. Then, as needed based on the answers of the various veniremembers, the Court will question certain jurors individually and out of the presence of the entire panel. The Court may then allow counsel for both parties to follow up with questions it deems appropriate given the circumstances.[13]

By utilizing such a method, the Court believes it will protect the Defendant from prejudice based upon pretrial publicity or community prejudice and will create " 'a

---

**11.** At the time the prospective jurors complete the questionnaire, they will receive an order from this Court instructing them not to discuss the captioned case with anyone.

**12.** During the hearing, a suggestion was raised that certain categories of potential jurors could be eliminated based on answers provided in the juror questionnaire, i.e., po-

tential jurors that were employees of Enron at the time of its collapse.

**13.** This description is merely a summary of the procedure that the Court may utilize. As the trial date approaches, further instructions will be provided to counsel, which will more specifically set out the parameters of the voir dire.

**922**

reasonable assurance that prejudice would be discovered if present.'" *United States v. Nell,* 526 F.2d 1223, 1229 (5th Cir.1976) (quoting *United States v. Dellinger,* 472 F.2d 340, 367 (7th Cir.1972)); *see also Beckner,* 69 F.3d at 1292 (explaining that a conviction will be reversed "because of pretrial publicity if the defendant can establish (1) that pretrial publicity about the case raised a significant possibility of prejudice, and (2) that the district court's voir dire procedure failed to provide a reasonable assurance that prejudice would be discovered if present") (citing *United States v. Chagra,* 669 F.2d 241, 249–50 (5th Cir.1982)). Furthermore, implementing such a hybrid procedure may permit the attorneys to interrogate those jurors who present an obvious concern, while enabling the Court to ensure an efficient, yet flexible, voir dire, which is an acceptable consideration for the Court. *Davis,* 583 F.2d at 197 ("We recognize the district court's need for flexibility in interrogating jurors as to possible prejudice."). Finally, to preserve the sanctity of the jury once it is impanelled, the Court will admonish the jury to avoid media coverage of the case and will order further safeguards as necessary.

## *CONCLUSION*

Based upon the foregoing, the Court hereby

ORDERS that Defendant Lea Fastow's Motion for Change of Venue and Motion for Individual Voir Dire are DENIED.