# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 23, 2021

Lyle W. Cayce
Clerk

No. 19-30865

United States of America,

*Plaintiff—Appellee*,

*versus*

Patrick Hale Dejean,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CR-49-1

Before Clement, Ho, and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

A jury convicted Patrick Hale Dejean of mail fraud and making false statements to a bank. As a justice of the peace, Dejean exploited his position to pilfer thousands of dollars in public funds, which he used for casino gambling. He now challenges the district court's decision to seat a juror who, he claims, was biased against gamblers. We affirm.

**I**

Beginning in 2009, Dejean served as a justice of the peace for the Second Justice Court of Jefferson Parish, Louisiana. Dejean abused this

position in various ways. His court received fees for handling wage garnishments. *See* LA. STAT. ANN. §§ 13:2590, 2590.1. Dejean diverted some of those fees into his own pockets. He also falsely obtained bank loans purportedly for the court and withdrew funds from court accounts for personal use. He used the money to gamble at casinos. For these misdeeds, Dejean was federally indicted in February 2017 and went to trial in February 2019. Dejean's appeal focuses on his jury selection, which we therefore describe in some detail.

The district court began *voir dire* by ensuring potential jurors agreed to "decide the case only on the evidence adduced at . . . trial and the law as instructed" and to "firmly put aside any feelings of prejudice, sympathy, or passion." Dejean's lawyers then sought to weed out jurors whose views on gambling might prejudice them against Dejean. On this basis, the court granted for-cause challenges to two jurors: Juror 22, who admitted her disdain for gambling would deny Dejean "an even playing field," and Juror 27, who condemned gambling as "evil."

Dejean's appeal focuses on Juror 31,[1] who was questioned as follows:

[JUROR 31]: I do not gamble.

[DEFENSE COUNSEL]: And do you have a particular attitude toward those who do?

[JUROR 31]: I think it's a silly way to spend your money, but that's what you choose to do. That's on you. But I mean[,] I've had family members in the past that have had issues with gambling.

---

[1] Dejean's brief also claims the bias of Juror 38, who was seated as an alternate. At oral argument, however, Dejean's counsel conceded Juror 38 was not challenged on that basis at trial. We commend counsel's candor and therefore do not consider any challenge to Juror 38. *See, e.g.*, *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 210 (5th Cir. 1992) ("[A] post-trial challenge to the composition of the jury is untimely and therefore barred.").

[DEFENSE COUNSEL]: In other words, you've had people who perhaps do it and have caused problems—

[JUROR 31]: Yes.

[DEFENSE COUNSEL]: —for their families?

[JUROR 31]: Correct.

[DEFENSE COUNSEL]: How do you view gambling? I mean is it something—Again, I can't look into your brain. But is it something you view as wrong, immoral, unethical? What?

[JUROR 31]: I don't think it's so much immoral or unethical. I just—Again, I don't agree with it. I just think it's silly, a way to throw your money away, personally.

[DEFENSE COUNSEL]: Would it affect the way you judge somebody who you will learn is an avid gambler?

[JUROR 31]: Possibly.

[DEFENSE COUNSEL]: Okay, I appreciate your honesty. I mean if you say "possibly," you're leaving the possibility that it could affect you in an unfair way. Is that right?

[JUROR 31]: Correct.

[DEFENSE COUNSEL]: If you tell us that, I take it what you're, in effect, saying to us—and I appreciate it—you shouldn't sit on this case.

[JUROR 31]: No.

Dejean's lawyer tried to strike Juror 31 for cause, arguing: "Didn't she say she couldn't be fair?" The district court disagreed: "No. That wasn't the context of her testimony. She said she wasn't going to waste her money. She didn't care what other people did." Counsel did not use a peremptory strike on Juror 31, exhausting his allotted ten strikes on other potential jurors. The court settled on a panel of twelve jurors, including Juror 31. Later, counsel again tried to strike Juror 31, mistakenly attributing to her Juror 27's view that "gambling is evil." The court again denied the request.

The jury ultimately convicted Dejean of thirteen counts of mail fraud and three counts of making a false statement to a bank. It acquitted him of two counts of wire fraud. The district court denied Dejean's motion for new trial, rejecting his assertion that the jury was biased. Specifically, it disagreed that Juror 31 exhibited bias: "[W]hile defense counsel ultimately was able to extract a concession from Juror 31 that she shouldn't sit on the case, it was the court's impression that Juror 31's ultimate acquiescence was made in response to leading questions, and out of a desire to simply end the questioning." Based on "the totality of the circumstances, the details of the exchange, and her demeanor," the court found no basis for granting a for-cause challenge to Juror 31.

Dejean timely appealed.

## II

A district court has "broad discretion" in assessing a potential juror's impartiality during *voir dire*, a decision we will not overturn "absent a clear abuse of discretion." *United States v. Hinojosa*, 958 F.2d 624, 631 (5th Cir. 1992); *see also United States v. Greer*, 968 F.2d 433, 435 (5th Cir. 1992) (en banc). "In reviewing claims of this type, the deference due to district courts is at its pinnacle." *Skilling v. United States*, 561 U.S. 358, 396 (2010).

## III

A criminal defendant has the right to a trial by an impartial jury, secured by the Sixth and Fourteenth Amendments. U.S. Const. amends. VI, XIV; *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). A juror must be excluded "if his 'views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *United States v. Cooper*, 714 F.3d 873, 878 (5th Cir. 2013) (quoting *United States v. Hall*, 152 F.3d 381, 406 (5th Cir. 1998)). If a potential juror shows "actual prejudice," the court must grant a challenge for cause. *United States v. Apodaca*, 666 F.2d 89, 94 (5th Cir. 1982).

Dejean argues the district court violated these principles, thus depriving him of a fair trial, by denying his challenges to Juror 31. In his view, Juror 31 not only "acknowledged that her thoughts on gambling could affect her in an unfair way" but also expressly "agreed that she shouldn't sit on the case." The district court saw things differently, concluding Juror 31's agreement that she should not sit on the jury was a response to leading questions and a result of her desire to end the questioning. Giving the considerable deference that is due to the district court's assessment of juror impartiality, *see Ristaino v. Ross*, 424 U.S. 589, 594–95 (1976), we find no abuse of discretion.

Dejean argues that the district court, instead of merely relying on Juror 31's "demeanor," was instead required to question the juror further to ascertain the extent of her apparent prejudice against gamblers. We disagree. "No hard-and-fast formula dictates the necessary depth or breadth of *voir dire*." *Skilling*, 561 U.S. at 386. The district court properly assessed Juror 31's testimony holistically, including her statement at the beginning of *voir dire* that she could put aside her personal views and decide the case on the evidence, her colloquy with defense counsel, and her overall demeanor. Contrary to Dejean's argument, the court was not required to "rehabilitate" Juror 31 because it found she was not biased in the first place. "[D]eterminations of juror bias depend in great degree on the trial judge's assessment of the potential juror's demeanor and credibility, and on his impressions about that venireman's state of mind." *Wicker v. McCotter*, 783 F.2d 487, 493 (5th Cir. 1986).

Dejean suggests the court's evaluation of Juror 31's demeanor is less reliable because the exchange with Juror 31 was not as extensive as the questioning of jurors in other cases where we have upheld a court's determination of impartiality. *See Hinojosa*, 958 F.2d at 630–31; *Celestine v. Blackburn*, 750 F.2d 353, 358–61 (5th Cir. 1984); *Apodaca*, 666 F.2d at 93–95. In those cases, we upheld the trial court's decision to allow the jurors to

remain on the jury, and they arguably showed greater potential for bias than Juror 31. *See Hinojosa*, 958 F.2d at 630 (juror whose son "had had a drug problem as a teenager" stated she was "'not sure'" whether she could fairly decide case involving drug-related crimes); *Celestine*, 750 F.2d at 358-60 (juror knew prosecutor and granddaughter of the murder victim); *Apodaca*, 666 F.2d at 93-94 (juror and her husband both had worked for the FBI and she stated she might favor the prosecution). To be sure, the jurors in those cases did not agree that they should not sit on the jury, as Juror 31 did here, but they arguably expressed stronger reasons to doubt their abilities to be impartial than Juror 31 did. In any event, those cases show the wide latitude afforded a trial judge's conduct of *voir dire*. *See, e.g.*, *Apodaca*, 666 F.2d at 94 (rejecting argument that trial judge erred in failing to question the juror specifically whether she would favor the prosecution "in this case").

The lack of rehabilitation questioning here does not amount to an abuse of discretion; nonetheless, it would have been prudent for the court to inquire further. After all, Juror 31 agreed—without qualification—that she "shouldn't sit on this case" after a brief line of questioning by the defense counsel, a statement absent from *Hinojosa*, *Celestine*, and *Apodaca*. At the very least this response raises questions about the juror's impartiality—questions that would be troubling had the district court not later found the response was motivated by the juror's desire to end counsel's questioning. We agree, as the government contends, that potential jurors are not presumed to know the legal standard for impartiality, but a follow-up question may have been warranted given Juror 31's unqualified response and the relatively short *voir dire*.

Dejean relies on our decision in *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006), but that case is distinguishable. *Virgil* concluded that defense counsel rendered ineffective assistance by not challenging a juror who agreed he "could not serve as an impartial juror" because of his bias against "repeated offenders." *Id.* at 603, 613. Dejean asserts that the exchange in *Virgil* is

substantially the same as the one his lawyer had with Juror 31 and that in *Virgil* we found the juror "unequivocally expressed bias." *Id.* at 614. But *Virgil* differs in a key respect. In that case, there was no objection from counsel nor any follow-up from the court, making it impossible to know "the depth or intensity" of the juror's bias. *Id.* at 613. Here, by contrast, counsel's objection to Juror 31 elicited not one but two rulings finding the juror was not biased, based on the district court's own observation of the proceedings, to which we owe great deference. *See Skilling*, 561 U.S. at 396; *Wicker*, 783 F.3d at 493.[2]

Dejean also relies on *United States v. Martinez-Salazar*, 528 U.S. 304 (2000), but he is mistaken. There, a juror should have been dismissed because he contested the bedrock presumption of innocence: he said he "would probably tend to favor the prosecution" because "you assume that people are on trial because they did something wrong." *Id.* at 308 (cleaned up). Here, Juror 31's negative views about gambling implicate nothing like that kind of structural bias against all criminal defendants. Further distinguishing this case from the undisputed bias in *Martinez-Salazar*, the district court affirmatively found that Juror 31's views on gambling (unlike other jurors who were dismissed for cause on that ground) would not prevent her from being impartial.

***

The district court's judgment is AFFIRMED.

---

[2] We similarly reject Dejean's reliance on *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001). As in *Virgil*, in *Hughes* the Sixth Circuit found ineffective assistance when counsel failed to challenge a juror who flatly stated he "d[id]n't think [he] could be fair." *Id.* at 456. There too, however, neither counsel nor the district court "conduct[ed] the most rudimentary inquiry of the potential juror to inquire further into her statement that she could not be fair." *Id.* at 458–59. That is quite different from this case, where the district court twice gave affirmative reasons for finding Juror 31 was not impermissibly biased.