[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-14651
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 9, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00527-CR-T-23-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMAIL JAMES HOGAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(November 9, 2007)**

Before ANDERSON, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Jamail Hogan appeals his convictions for carjacking with serious bodily injury, a violation of 18 U.S.C. §§ 2119, 2119(2) and 2; conspiracy to obstruct commerce by robbery, a violation of 18 U.S.C. § 1951; obstruction and attempted

obstruction of commerce by robbery, a violation of 18 U.S.C. §§ 1951, 2; carrying, brandishing, and discharging a firearm in relation to a crime of violence, a violation of 18 U.S.C. §§ 924(c)(1)(A) and 2; and possession of a firearm by a convicted felon, a violation of 18 U.S.C. § 922(g)(1). On appeal, Hogan asserts the following claims: (1) that the district court deprived him of an impartial jury when it refused to propound to the venire proposed questions relating to his status as a convicted felon and his race; and (2) that the district court erred by permitting victims to testify, as lay witnesses, to the similarity between the criminal perpetrators' clothing and clothing which was seized from him and introduced into evidence as part of the government's case.[1] After careful review, we affirm.

We review for abuse of discretion a district court's refusal to ask proposed voir dire questions. See United States v. Chastain, 198 F.3d 1338, 1347-48 (11th Cir. 1999). We review a district court's evidentiary rulings for a clear abuse of

---

[1] We reject Hogan's additional argument, that the prosecutor engaged in improper argument during closing arguments. The district court offered to provide a curative instruction to the jury, a curative instruction that would have insured the jury was not left to speculate on the issue of whether Hogan's co-defendant, who was tried separately, had confessed to his own involvement in the charged crimes. Hogan refused the district court's offer, thereby effectively inviting any alleged error relating to the motion for mistrial, of which he now complains. Cf. United States v. Harris, 443 F.3d 822, 823-24 (11th Cir. 2006) (if a defendant induces or invites the district court into making an error, we will not review the error on appeal). In any event, even if we were to address the claim, Hogan has not shown prejudice to his substantial rights, as we would require him to do if he had preserved, and not improperly invited, this claim. See. United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998) (discussing requirements of a claim for prosecutorial misconduct).

2

discretion, and will reverse only if the resulting error affects substantial rights. See

United States v. Tinoco, 304 F.3d 1088, 1119 (11th Cir. 2002).

The facts relevant to our analysis of Hogan's claims are these. On February 22, 2006, in a superseding indictment, Hogan and Bryan Smith, who is Hogan's half-brother, were charged with: (1) conspiring to obstruct commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count One); (2) carjacking with serious bodily injury, in violation of 18 U.S.C. §§ 2119, 2119(2) and 2 (Count Two); (3) three counts of carrying and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(A)(ii), and 2 (Counts Three, Eight, and Ten); (4) three counts of obstructing commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Counts Four, Six, and Nine); (5) three counts of carrying and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(A)(iii), and 2 (Counts Five, Seven, and Twelve); and (6) attempting to obstruct commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count Eleven). Hogan pled not guilty to all charges and proceeded to a jury trial, after which he was sentenced to a 242-year term of imprisonment.[2]

---

[2] After the district court granted the co-defendants' motion to sever trial, Smith also proceeded to a separate jury trial, after which he was sentenced to a total 140-year term of imprisonment.

Prior to the trial, Hogan filed proposed voir dire questions, pursuant to Rule 24(a)(2) of the Federal Rules of Criminal Procedure. The proposed questions included these:

> 17.  You will hear . . . Hogan has previously been convicted of an offense that is punishable by a year or more in prison, in other words a felony offense. . . .
>
> 19.  Does anyone here feel that a person who has been convicted of a felony in the past should not be trusted or believed? . . .
>
> 24.  Is there anyone who feels that because Mr. Hogan has been convicted of a felony in the past, it would be more difficult for them to decide this case only on the evidence or lack of evidence presented at trial? . . . .
>
> 33.  Does anyone feel that African Americans are more likely to commit violent crimes?
>
> 34.  Does anyone feel that the defendant's race makes it more likely that he is guilty?

During jury selection, the court read the indictment to the venire panel, including Count 13 which charged Hogan as a felon in possession of a firearm. Also, the court elicited the jurors' personal experiences with crime. Moreover, the court instructed and inquired:

> It is the duty of a juror . . . not to be influenced or swayed, or governed by any prejudice, any undue sympathy, or any other undue sentiment that does not respond fairly to the evidence and the law. . . . to be impartial, to be fair minded, to treat persons on an equal footing and as equals before the law. . . . [I]t is the duty of a juror to at all

4

> times be unbiased and unprejudiced, and impartial, and dispassionate in his or her decision in the case.
>
> Given that, . . . are there any of you who have any reason to doubt your ability to serve as jurors and render a fair and impartial decision in this particular case? Anyone to my left believe that they–whether for reason of conscience, or scruples or otherwise cannot serve as juror under the circumstances that I suggested? Anyone to my left? Anyone over here to my right?

No one responded affirmatively.

After asking its own questions, the district court requested additional voir dire questions from the parties. Hogan requested his proposed questions numbered 17, 19, and 24, all of which related to his felon status. The government responded that the district court need only determine whether a potential juror could follow instructions because the instructions would explain how to view the felony conviction. The district court denied Hogan's request.

Hogan also requested his proposed questions 33 and 34, both of which related to race. The district court denied the request, and Hogan responded that he wanted to court to frame "the question any way that the court is comfortable to attempt to ferret out racial prejudice." The district court responded:

> The question really goes, the way it is framed, to the -- it incorporates the concept of likelihood and I think that is ambiguous and I don't know whether it means frequency or proclivity, or some sort of discounted percentage of the population as a whole. It sounds to me like something that doesn't have to do with the integrity of the juror in considering a defendant on his or her own merits.

5

Hogan suggested that the court personalize the inquiry, but the court stated:

> I just don't see this as a productive inquiry. To go back and inquire of a juror whether she was assaulted by a -- to identify the ethnicity of racial attributes of the assailant seems to me to be unnecessarily provocative and suggestive, and to a certain extent almost accusatory, particularly when it comes from me.

Hogan offered no other suggestions.

The government's case detailed five violent, armed robberies, which took place in five different locations in or around Winter Haven, Florida over the course of six days in November and December of 2005, and one of which resulted in the death of a clerk who was shot during the robbery of his convenience store. The government presented testimony from law enforcement officers and private citizens, along with forensic evidence and exhibits, which implicated Hogan in the series of robberies.

Specifically, Deputy John Burcham testified that he stopped a white, four-door, Chevy Cavalier, driven by Hogan, for speeding on December 2, 2005 at 11:00 p.m. At the scene, Deputies Steven Mills and Thomas Tompkins testified that they found rounds of .380 caliber ammunition in Hogan's lap and another round in his pocket. Paula Maney, a crime scene technician, collected the clothes Hogan was wearing at his arrest, including a "Dirty South" sweatshirt jacket and black sneakers. Detective Ken Raczynski testified that a search of the Cavalier

revealed two .380 caliber ammunition rounds, a side-handled baton, a red sweatshirt, a .380 caliber firearm, a Mechanix glove, a camouflage glove, a ski mask, a black and white bandana, a "do rag," jean shorts, and a backpack. Detective Travis Avery testified that a search of Hogan's residence revealed a camouflage glove, hooded jacket, red sneakers, a white baseball cap, .380 caliber ammunition, a blue latex glove, a red bandana, white tennis shoes, a white ski cap, a cream ski cap, and a white nylon stocking cap or do rag. All of the foregoing seized items were admitted into evidence during the detectives' testimony.

Suvi Cyriac, a store clerk for Speedy Food Market, testified that on November 26, 2005, two men entered the Market and one of them put a gun to his head, ultimately fracturing his jaw. One of the robbers also fired shots at him as they robbed the store. The government asked Cyriac if the red sneakers worn by one of the robbers were similar to the ones found in Hogan's residence and admitted into evidence during Detective Avery's testimony. Hogan objected to this line of questioning, arguing that the government had not established if Cyriac was testifying from memory. Cyriac then said that he did not recall the red sneakers from his memory, but that the surveillance images refreshed his recollection. The government again asked Cyriac to compare the red sneakers, thereby lodging another objection from Hogan, who asserted that the question called for improper

lay opinion testimony in violation of Rule 701 of the Federal Rules of Evidence. The district court overruled the objection, and Cyriac testified that the shoes admitted into evidence were similar to the ones worn by one of the robbers.

Next the government asked Cyriac if the men had anything on their hands. Hogan objected to the line of questioning under Rule 701, stating:

> . . . the 701 violation is the witness is being asked to offer a lay opinion essentially identifying evidence that was recovered from my client's house as being the same or similar to what was not in his memory about the events that occurred but rather what is being seen in a video or in a photograph.

Hogan continued, "[it] violates 701 because it is not helpful to the jury. The jury is as capable as this witness at making that comparison when [the government] directs their attention to that at whatever point." The government countered that Hogan's cross-examination could highlight any weakness in the testimony, leaving its weight and credibility to be determined by the jury. Hogan responded that the objection stemmed from the witness having no independent recollection of a particular piece of evidence, but the government nonetheless led the witness to conclude that the evidence was the item depicted in the image. The district court overruled the objection, finding that the witness had already testified that he had a vivid recollection of the events and that the witness was qualified to testify, under Rule 701.

The government repeated its question, and Cyriac responded that he had seen a glove during the robbery. Then, the government asked if the glove was the glove admitted into evidence. Hogan again objected based on Rule 701 and insufficient foundation and knowledge. The court overruled the Rule 701 objection, but required further foundation. Cyriac then testified that he saw a "really dark color" glove. The government asked how he would describe the glove in evidence; Hogan objected again. The court sustained the objection, and Cyriac never answered the question.

Alice Bodley, a store clerk at Island Foods, and Della Ehrhart, a store clerk at the Circle K, also testified for the government. They stated that, on November 27, 2005 (the night after the Speedy Food Market robbery), two men with a gun robbed their respective stores. Bodley and Ehrhart both testified, without objection from Hogan, that the perpetrators wore clothing similar to that which had been submitted into evidence.

The government also called Raj Bhaskran, a store clerk at Bill's Market, which was robbed on December 2, 2005. Bhaskran testified that two men robbed the store and shot his co-worker, Remesh Desai, who ultimately died from the gunshot. Without objection, Bhaskran stated the perpetrators wore clothes and carried items that were the same as those admitted into evidence. He testified that,

9

although the faces were covered, he recognized Hogan because Hogan frequented the store for lunch as an employee of a nearby company, Homes of Merit.

The government also called Lynn Ernst, a senior crime laboratory analyst for the Florida Department of Law Enforcement ("FDLE"), who testified that shoe prints recovered from the crime scenes could have been made by the shoes recovered from Hogan when he was arrested. John Romeo, another crime analyst for FDLE, testified that some of the casings found at the crime scenes came from the firearm recovered from the Chevy Cavalier Hogan was driving when he was arrested.

At the conclusion of the government's case-in-chief, Hogan moved for a judgment of acquittal as to Counts Two and Three which was denied. The district court read to the jury the following stipulation:

> [T]he parties have stipulated . . . that . . . Hogan was previously convicted of a crime punishable by imprisonment for a term exceeding one year. You may accept that stipulation as a proven fact . . . This prior conviction is to be considered by you only with respect to Count 13. Specifically, you may not consider the prior conviction in deciding whether the United States has proved beyond a reasonable doubt that . . . Hogan committed the crimes . . . in Counts 1 through 7 and 9 through 12.

Moreover, at the conclusion of the evidence, the district court instructed the jury:

10

A separate crime or offense is charged in each count of the indictment. Each charge and the evidence pertaining to it should be considered by you separately. The fact that you may find the defendant guilty or not guilty as to one of the offenses charged should not [a]ffect your verdict as to any other offense charged. I caution you, members of the jury, that you are here to determine from the evidence in this case whether the defendant is guilty or not guilty. The defendant is on trial only for the specific offenses alleged in the indictment.

The jury found Hogan guilty on Counts One through Seven and Nine through Thirteen. At his sentencing hearing, Hogan faced a 7-year mandatory minimum term on Count Three and 25-year mandatory minimum terms on Counts Five, Seven, Ten, and Twelve, and, based on an offense level of 43 and a criminal history category III, an advisory Guidelines range of 242 years' imprisonment. The district court sentenced Hogan to a 242-year term of imprisonment, which consisted of the following consecutive terms: 240 months each for Counts One, Four, Six, Nine and Eleven; 300 months for Count Two; 120 months for Count Thirteen; 84 months for Count Three; and 300 months each for Counts Five, Seven, Ten, and Twelve. This appeal followed.

First, Hogan challenges the district court's refusal to ask the jury the voir dire questions he proffered concerning potential bias against convicted felons and African Americans. Hogan says that the failure to ask his requested questions deprived him of a fair and impartial jury, in violation of his due process rights. We are not persuaded.

11

"The constitutional standard of fairness requires that the criminally accused have a panel of impartial, indifferent jurors." Murphy v. Florida, 421 U.S. 794, 799 (1975). The Supreme Court has held that due process required examination of potential jurors on the issue of racial bias when requested at the criminal trial of an African American activist. Ham v. South Carolina, 409 U.S. 524, 526 (1973). Subsequently, the Court indicated a preference that racial prejudice be inquired into if requested, but has suggested that the inquiry is constitutionally mandated only if "special circumstances" exist where there are "substantial indications of the likelihood of racial . . . prejudice affecting the jurors," such as when racial issues are "inextricably bound up with the conduct of the trial." Rosales-Lopez v. United States, 451 U.S. 182, 189-91 (1981) (affirming federal conviction where general impartiality questions were propounded). Likewise, we have recognized that Ham presented special circumstances -- the defendant was an African American activist -- where racial issues were inextricable; therefore, specific voir dire related to racial bias was required. See Featherston v. United States, 491 F.2d 96 (5th Cir. 1974) (affirming dismissal of habeas motion which alleged that the district court improperly refused voir dire regarding racial prejudice where general impartiality questions, which included reference to color of skin, were propounded).[3]

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to

12

As for requests for questions concerning bias against felons, we have noted the importance of discovering such bias against felons during voir dire. United States v. Corey, 625 F.2d 704, 706-08 (5th Cir. 1980). However, we also have concluded that a district court is not required to ask a defendant's proposed questions related to this issue and may adequately cover the issue through general questions. Id.

In the instant case, the court advised the venire that Hogan was a felon, instructed them that he must be treated equally before the law and to consider the conviction only in relation to Count Thirteen. The district court then received assurances that the jurors could still impartially decide the case. Cf. United States v. Bennett, 368 F.3d 1343, 1351-52 (11th Cir. 2004) (rejecting challenge to district court's refusal to ask specific voir dire question about bias against felons, where the district court had advised the venire that the defendant was charged with being a felon in possession of a firearm and generally inquired about the jury's impartiality). Moreover, the court elicited the venire members' past experiences with crime, a question which provided a basis for Hogan to request specific individual inquiry into bias against felons if he felt it was appropriate, but he did

close of business on September 30, 1981.

13

not. On this record, we are satisfied the district court did not abuse its discretion in refusing to ask Hogan's questions about bias against convicted felons.

We also discern no abuse of discretion in the district court's refusal to ask Hogan's proffered questions about race. The district court characterized the questions as addressing general likelihood to commit crime and not racial prejudice, and the court found the questions to be "provocative and suggestive, and to a certain extent almost accusatory, particularly when it comes from me." At no point during the proceedings did Hogan argue that special racial circumstances existed which required specific inquiry into racial bias, nor did the government or Hogan allude to any special circumstances, motivations, or tension which would be remotely attributable to the race of the victims or Hogan. Cf. Rosales-Lopez, 451 U.S. at 189-91. Although the court did not mention race during its voir dire, the court instructed the venire members that they must consider Hogan on "equal footing" and "equal before the law" and must "at all times be unbiased and unprejudiced, and impartial." Immediately following these instructions, the court specifically inquired and received assurances that all jurors could follow these instructions. In short, the record does not demonstrate circumstances which demand inquiry beyond the general questions posed and the assurances of impartiality. Accordingly, the

court's instructions, when coupled with its questions, reasonably insured that felon or racial prejudices would be revealed.

We are not persuaded by Hogan's second argument either. Under Rule 701, a lay witness may testify to opinions or inferences "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. In 2000, subsection (c) was added to eliminate the risk that Rule 701 would be used to avoid the reliability requirements of Rule 702. See Fed. R. Evid. 701, Advisory Committee Notes (2002). Notably, the Notes state that the amendment was not intended to affect the type of evidence contemplated by adoption of Rule 701 relating to "the appearance of persons or things," and other similar points. Id.

Rule 403 excludes relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. We have noted that Rule 403 should be used "sparingly." Tinoco, 304 F.3d at 1120. Thus, when analyzing

15

Rule 403 issues, we view "the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." Id.

Having reviewed the record and the briefs of the parties, we discern no abuse of discretion in the district court's evidentiary rulings under Rule 701, which plainly contemplates lay witnesses offering testimony to the similarity of clothing based on their firsthand perceptions, nor do we find that Hogan has shown any unfairly prejudicial impact from the testimony requiring its exclusion under Rule 403.

**AFFIRMED**.